COOK AND PRATT *against* THE COMMERCIAL INSURANCE COMPANY.

*Barratry may be committed by the master of a ship, in respect to the cargo, though the owner of the cargo is, at the same time, owner of the ship, and though the master is also the supercargo or consignee for the voyage.*

THIS was an action on an open policy of insurance, dated the 5th *June*, 1809, on the *cargo* of the schooner *Despatch*, " at and from *St. Jago de Cuba* to *New Orleans*, and at and from thence to *New-York.*" The plaintiffs claimed a total loss by barratry of the master. The *Despatch*, belonging to the plaintiffs, with a cargo also owned by them, sailed from *New-York* on the 29th *August*, 1806, for *St. Jago de Cuba*, commanded by *L. Rogers*, who was also *supercargo* and *consignee* for the voyage. The vessel arrived at *St. Jago de Cuba*, where the outward cargo was sold by *Rogers*, and part of the proceeds invested in a return cargo, consisting of indigo, tortoise shell, and specie, equal in value to the amount insured; and on the 26th *April*, 1809, the vessel sailed under the command of *Rogers*, on the voyage insured, and arrived at *New Orleans* on the 8th *June*, 1809, where *Rogers*, the master, fraudulently converted the specie to his own use, and never further prosecuted the voyage, but afterwards absconded.

A verdict was taken for the plaintiffs, subject to the opinion of the court on the above case.

*D. B. Ogden*, for the plaintiffs, contended that this was a clear case of barratry, and the only possible objection he could anticipate to the plaintiffs' right of recovery was, that when the master was also supercargo and consignee, there could be no barratry in regard to the *cargo*, or there could be no barratry, in that respect, where the owner of the cargo was at the same time owner of the vessel. As to this objection, he relied on the case of *Earle* v. *Rowcroft*,[*] in which Lord *Ellenborough* considered it as hardly deserving a serious answer; but that it need only be stated to show that it had no weight. *Barratry* is there laid down to be any fraudulent or criminal conduct against the owners of ship or goods, by the master or mariners, in breach of the trust reposed in them, and to the injury of the owners, though not done with intent to injure the owners, or to benefit, at their expense, the master or mariners.

[*] *8 East*, 126.

*Wells*, contra. The doctrine of barratry is not founded on principles of natural justice. Its operation against insurers, who do not appoint, and seldom have any knowledge of, the master or mariners, is hard and unjust. The court, therefore, will not feel disposed to extend it, but will rather confine it where it ought to be confined, to the *owners of the vessel*, who have the appointment of the master. Lord *Mansfield*[*] thought it extraordinary that the doctrine should ever have crept into the law of insurance.(*a*)

1. The first proposition for which I shall contend is, that there cannot be barratry, in relation to the cargo, when it is owned by the owner of the vessel.

*Marshall*[†] defines barratry " any act committed by the master or mariners, for an unlawful or fraudulent purpose, contrary to their duty to their owners, and whereby the owners sustain an injury." The definition of *Park* is more accurate; " that any act of the master or mariners, which is of a criminal or fraudulent nature, or which is grossly negligent, tending to their own benefit, to the prejudice of the *owners of the ship*, without their consent or privity, is barratry." This definition is adopted by *Brackenridge*, J. in the case of *Calhoun* v. *Insurance Company of Pennsylvania*,[‡] omitting the words "tending to their own benefit." All these definitions agree in one essential circumstance, that the act done must be to the prejudice of the *owners of the vessel*. This prejudice may be either *direct* and *immediate*, or *consequential*. For when the cargo is fraudulently disposed of by the master, it is *consequentially* injurious to the owners of the vessel, because they are responsible for the embezzlement of the cargo. But if no injury, direct or consequential, arises to the owners of the vessel, there can be no *barratry*. Here the plaintiffs are owners of both vessel and cargo, and as they cannot, in the character of owners of the vessel, be answerable to themselves, as owners of the cargo, no such injury can arise, and so there is no barratry. This is an insurance on the cargo only. If the vessel only had been insured, or if the cargo had belonged to third persons, then there might have been barratry.

On examination, every case of barratry, reported in the *English* books, will be found to militate against the distinction which has been stated by the plaintiffs' counsel. They will be found to be

(*a*) See *Millar on Insurance*, 138—455, 1 *Emerigon*, 366.

ALBANY, Jan. 1814.

Cook
v
Com. Ins. Co.

[*] *Nutt* v. *Bourdieu*, 1 *Term Rep.* 323—330.

[†] *Marsh. on Ins.* 375.

[‡] 1 *Binney's Rep.* 293. 322.

ALBANY,
Jan. 18.4.

COOK
v
COM· INS. Co.
* 2 Stra. 1174.
† 2 Stra. 264.
‡ Cowp. 143.
and see 1
Johns Rep.
23. n.
§ 1 Term Rep.
315.
‖ Term Rep.
2... see also
Term Rep.
277.
** 4 Term
Rep. 5.
†† 6 Term
Rep. 379.

‡‡ 7 Term
Rep. 503. See
also Knight v.
Cambridge,
1 Stra. 81.
Ld. Raym.
1349·

cases in which the policy of insurance was on the *vessel* only, or where the *cargo* insured belonged to *third* persons, and not to the owner of the vessel. In *Stamma* v. *Brown*,* the goods insured were shipped by a third person. In *Elton* v. *Brogden*† the policy was on the ship. In *Vallejo* v. *Wheeler*‡ goods were insured; the ship belonged to *Willis*, who chartered her to *Darwin*, who set her up as a general ship, and *Vallejo* was one of the shippers of goods. In *Nutt* v. *Bourdieu*,§ the policy was on goods shipped by a third person. *Lockyer* v. *Offley*‖ was on the ship, and the act of *barratry* was smuggling. In *Ross* v. *Hunter*** the insurance was on goods shipped by a third person. In *Moss* v. *Byron*†† the policy was also on goods shipped by a third person; and the act of barratry consisted in deviating for the purpose of taking prizes, and which made the owners of the vessel, under the charter-party, liable for damages. In *Phynn* v. *Royal Exchange Insurance Company*,‡‡ there was a policy on goods, but it does not appear who owned the goods. In the case of *Lewin* v. *Suasso*, cited by *Park*, (128.) it is not distinctly stated whether the insurance was on the ship or cargo, but as the barratrous act was alleged to be a fraudulent sale of the vessel, the inference is irresistible that the policy was on the ship.

In the decisions of our own courts will be found two cases which seem to militate against the proposition which I have endeavoured to support. In all the other cases, the insurance was either on the *ship* alone, or on goods owned by a third

§§ 2 Caines'
Rep. 6 . 22.
3 Caines'
Rep. . 89 ɪ
Johns· Rep.
229. 8 Johns.
Rep. 272.
‖‖ 4 Dallas's
Rep. 294.

person.§§

The case of *Crousillat* v. *Ball*,‖‖ in the supreme court of *Pennsylvania*, arose on a policy on ship and cargo, both of which were owned by the plaintiff; and *Yeates*, J. before whom the cause was tried, directed the jury to find a verdict for the plaintiff, on the ground of the barratry of the master. In that cause, however, the distinction now raised was not made by the counsel, nor considered by the court. In the case of *Wilcocks and others* v. *Union Insurance Company*,*** it is stated in a

*** Marsh.
on Ins. 34.
in by Condy

†††·Binney's
Rep. 574.

note to *Condy's* edition of *Marshall on Insurance*, that the plaintiffs were owners both of the vessel and cargo; but the fact is not stated in the report of the case by *Binney*,††† and there is reason to conclude that Mr. *Condy* must have been mistaken as to that fact. There is not, then, a single decision, in our own courts, except that of *Crousillat* v. *Ball*, where the plaintiff, being owner both of the vessel and cargo, recovered against the insurer on the ground of barratry. The *American*

ALBANY,
Jan. 1814.

Coox
v.
Com. Ins. Co.

decisions, in this respect, are in unison with those of the *English* courts. This court, therefore, in adopting what I conceive to be a solid distinction, will not violate any authority.

2. Where the master is also *supercargo*, or *consignee*, and the barratrous act may be referred to his character as *consignee*, the insured cannot recover on the ground of the barratry of the master. Here the master was *consignee* of the cargo, and so it is distinguishable from the case of *Earle* v. *Rowcroft*,* in which * 8 *East*, 127. the captain was a *supercargo*.

*Emerigon*, notwithstanding the marine ordinance of *France*, is of opinion that the owner of the ship cannot be insured against the barratry of the master, because, being himself answerable, according to the *Roman* law,† for the master he employs, he cannot, as *insured*, throw the burden on the insurer, † *Dig. lib.* 14, *tit.* 1. s. 5. who would have immediate recourse against him as *owner*, to recover back the same loss, and thereby produce a circuity of action, which is not allowed by law. And he states and discusses the precise question, whether, if the master has a commission to dispose of an adventure of goods on board, the insurer of such adventure is answerable for the loss of it, occasioned by the fault of the master; and he is of opinion that he is not, for this would make the insurer answerable to the insured for the faults of his own agent or factor. He says the clause in the policy as to *barratry* of *master* and mariner, relates only to the acts of the captain committed in quality of *master*, and not to such acts as render him culpable in his function of mercantile agent. And, he adds, the matter is attended with much less difficulty, if the captain, having arrived at his port of destination, squanders away the goods or adventure consigned to him; for it is then a *land risk*, for which the insurer cannot, in any manner, be responsible.(a) Now, in the present case, the vessel had actually

(a) 1 *Emerigon*, *Traité des Ass.* 369, 370 " Les assureurs qui se sont rendus garans de la barraterie du patron, sont-ils responsables de la perte de la pacotille assurée, si cette perte arrive par la faute du capitaine, chargé de la commission ?

La clause *d'être tenu de la barraterie du patron*, ne concerne que les fautes que le capitaine commet en sa qualité de *maitre*, et nullement celles dont il se rend coupable dans ses fonctions de marchand et de gereur

Si le capitaine a failli en sa première qualité ; comme s'il a dérouté, &c. les assureurs qui se sont rendus garans de la barraterie du patron, en sont responsables ; mais malgré ladite clause, ils ne sont pas tenus des fautes que le capitaine commet en sa qualité de facteur. *Vide Casaregis*, Disc. 1. n. 75, 76.

La chose reçoit encore moins de difficulté, si le capitaine parvenu au lieu destiné, dissipe la pacotille chargée à consignation. C'est alors *un risque de terre*, dont les assureurs ne répond en aucune maniere."

arrived at *New Orleans*, her port of destination. *Marshall*, who cites the doctrine of *Emerigon*, does it with approbation, and seems not to consider it, in this respect, as different from the *English* law. And in *Crousillat* v. *Ball*, the proposition is admitted to be clear law. The court there said the plaintiff must recover, "unless, the evidence shall satisfy the jury that the captain was the general agent and consignee of the plaintiff, and acted as such; in *that case*, the law is equally clear, that the acts of a general agent cannot, any more than the acts of the principal himself, be denominated *barratry*." The doctrine of *Emerigon* was recognised by this court in the case of *Kendrick* v. *Delafield*,* and impliedly adopted as law. *Kent*, J. having in view the distinction, says, " The fraud of the master was not committed in the character of consignee of the plaintiff's cargo, but in his character of master of the vessel. This is the true distinction on the subject, and which reconciles the doctrine in *Emerigon* with the plaintiffs' claim in the present case. The captain did not, and could not, lay aside his character and responsibility as master, until the vessel had performed her voyage, and arrived at the port of destination." So here, on the arrival of the *Dispatch* at *New Orleans*, the character of the captain as *master*, in relation to the goods, ceased, and his character as *consignee* commenced, and it was in the latter character that the fraudulent act was committed.

*D. B. Ogden*, in reply, said, the distinction raised by the counsel for the defendant in discussing the first point, though ingenious, was not to be found in the books, and it is very surprising that *Marshall*, a writer so learned and correct, in his treatise on this subject, had not taken notice of such a distinction, which, if known in the law of insurance, must be allowed to be very important. The fact that it has never been stated in the argument of the numerous cases which have arisen on the subject, nor been laid down by any elementary writer or judge, so far from being in favour of the proposition, is conclusive evidence against it.

It is an erroneous argument to say that the insurers are liable, where the owners of the vessel are *consequentially* in-

1

jured by barratrous acts in relation to the cargo, because they *ALBANY,* are *consequentially* answerable to the owners of the cargo for *Jan. 1814.* the injury; but that when the injury is direct and immediate to *COOK* them, it should not be *barratry.* There are numerous cases where *COM. INS. CO.* the owners of the cargo have recovered against the insurer for the barratry. of the master. Barratry is any fraudulent act of the master to the injury of the owner of the ship or cargo. And it is because it was perfectly immaterial whether the fraudulent act was to the injury of the owner of the vessel or the owner of the cargo, that the distinction now attempted to be made was never thought of before.

As to the second point, the opinion of Lord *Ellenborough*, in *Earle* v. *Rowcroft*, is a conclusive answer. The distinction between the two characters united in the captain, of *master* and *supercargo*, is treated as perfectly futile and groundless.

Again, the act of barratry was not in taking the goods on shore, but because he carried them on shore fraudulently, with an *intent* to convert them to his own use. It can make no difference when or where the act is done, if the vessel has not been so long in port as to put an end to the insurance. Here the voyage insured was from *New Orleans* to *New-York*, so that the risk still continued in that port.

*Per Curiam.* There is no ground for the distinction taken by the defendants' counsel, that the master can only commit *barratry* as to the vessel, and as to the cargo belonging to third persons, but not as to the cargo which is owned by the owner of the vessel. The law permits the owner of the ship to be insured against the misconduct of the captain and crew, though they are his own agents, and persons of his own choice. It is too late to question the law, whatever we may think of its policy. And as the owner of the vessel can be insured against the *barratry* of the master, committed against the vessel, there is no reason why he should not be equally insured as to the cargo. The principle is the same, and all the cases in the *English* law, which define *barratry*, render it sufficiently comprehensive to embrace the owner of the cargo, notwithstanding he may happen to be also owner of the ship. *Barratry* includes every spe-

ALBANY,
Jan. 1814.

Cook
v.
Com. Ins. Co.

cies of fraud, concerning either the ship or cargo, committed by the master in respect to his trust as master, to the injury of the owners or shippers. It was for the defendants to show the exception, and the books afford no pretence for any; on the contrary, the case of *Crousillat* v. *Ball* (4 *Dall. Rep.* 294.) is an authority against the exception. That was a policy on ship and cargo, and both ship and cargo were owned by the plaintiff, who recovered on the charge of barratry committed particularly in respect to the cargo.

Nor can the barratrous act be referred to the master in his character of consignee. The cargo consisted partly of specie, and when the captain arrived at *New Orleans*, he converted the specie to his own use, abandoned the voyage, and absconded. This was clearly a criminal breach of duty in his character of master of the vessel, and though he had a superadded character of consignee, the act is properly imputable to him as master. (8 *East*, 140. 2 *Caines' Rep.* 72.)

Judgment for the plaintiffs for a total loss.