NEWYORK,
October, 1816.

GRIM
v.
THE PHOENIX
INS. COM.

GRIM *against* THE PHŒNIX INSURANCE COMPANY.

THIS was an action on a policy of insurance, on the schooner *Melinda*, from *Philadelphia* to *New-York.* The policy contained the ·usual enumeration of the hazards insured against ; such as perils of the sea, *fire, barratry* of the master and mariners, &c. The vessel dropped down on the 12th of October, 1811, below the city of *Philadelphia*, where she took in 136 kegs of gunpowder, which were all stowed in the hold ; and on .the 14th of *October*, while she was in the *Delaware*, 40 kegs of gunpowder were taken out of the hold, and 36 kegs were put. into the cabin, and stowed close up to the *companion-way*, and some tallow, which had been upon deck, was put into the hold, in the place of the powder so taken out, which was done, as the witness understood the captain, to make better stowage. It appeared that the vessel was very fully laden. The powder in the companion way, which leads to the main, or forward cabin, reached to the top which covered the companion. A tier of casks, or hogsheads of gin, were placed against the companion, and across the deck, from one side to the other. The companion projects above the deck about a foot, and the *binnacle* was placed on the quarter-deck, near the companion-way, the plank of which, toward the binnacle, was about one inch and an half thick, and that of the binnacle, about an inch thick. The main, or forward cabin, was entirely filled with goods, and there was no access to it, it being separated from the after cabin by a bulk-head, extending across the cabin ; and the people descended to the after cabin through a scuttle in the deck. The vessel, while proceeding down the bay, was forced back by a storm as far as *Bombay-Hook Island,* where she came to anchor, in the night of the 16th of *October.* It rained hard during the night, accompanied with thunder and lightning, and the storm continued until the morning of the 17th of *October*, and about 5 o'clock, P. M. the vessel blew up, and every person on board perished, except *William Saxton*, a passenger, who had never been a voyage before. At the trial, he was called as a witness for the defendants, and a verdict was taken for the plaintiff, subject to the opinion of the court, whether, under the circumstances of

A vessel was insured, among other risks, against *fire ;* during the voyage a *seamen* carelesly put up a lighted candle in the binnacle, which took fire, and communicating to some powder, the vessel was blown up, and wholly lost; it was *held*, that the insurers were not liable for the loss. Insurers are not responsible for the fault, negligence, or misconduct of the master or mariners, not a-mounting to bar-*ratry.* A loss occasioned by the mere negligence or carelesness of the master or mariners, does not amount t6 *barratry*, which is an act done with a fraudulent intent, or *ex maleficio.*

the loss, as stated by this witness, the plaintiff was entitled to recover? In addition to the facts above mentioned, the witness stated that a candle was kept burning in the binnacle every night, from the time the vessel left *Philadelphia*, until she was lost. In the night of the 16th of *October*, the watch on deck came down into the forecastle, where the witness was, and told one of the crew, who was to take the next watch, to go on deck and take his watch, and to take care of the candle; that the candle in the binnacle had burnt down so far into the socket of the candlestick, that the socket had become so hot he could not put another candle into it, and had stuck the candle to the side of the binnacle, it blowing so hard that he could not keep it burning on the outside. The seaman went grumbling on deck, and in about 20 minutes afterwards, the mate came to the forecastle and cried out to the men to turn out, all hands, for the binnacle was on fire, They all got on deck, and the witness immediately after them; they looked for the draw-bucket, but the deck was so much lumbered that it was one or two minutes before it was found. One of the crew drew a bucket of water, and handed it to the mate, as the witness believed, who was standing nearest the binnacle; and while the mate was in the act of throwing the water, the explosion took place. The witness added, that when he first came on deck, there did not appear to be greater light in the binnacle than what a candle would give; that there was a sail which covered the companion-way, and as the mate pulled away the sail, the witness discovered it to be on fire, and as the mate drew the sail, and threw the water, the witness heard a rumbling noise, and was not sensible of any thing afterwards, until he found himself climbing up the mast of the vessel, which was sinking in the water. The witness said, it was the constant usage to bring powder in vessels employed in this trade, and to store it either in the cabin or hold, as was most convenient.

*Slosson*, for the plaintiff, contended, 1. That the policy being against fire, covered all accidents by fire, not occasioned by the fraud of the insured, or his agents. *Marshall** says, there can be no doubt, but that a loss occasioned by fire, which is merely accidental, and not imputable to any fault of the master or mariners, is a loss within the policy. He does not state, whether, by the *English* law, the insurer would be liable, if the

* Marsh. on Ins. 494. 1 Burr. 341. 4 Term Rep. 206.

fire happened by the fault of the master or mariners. *Emerigon*,[*] lays down the rule, that the insurers are liable for losses by fire; but he says that at *Marseilles* they are not liable for a loss by fire, occasioned by the fault of the master or mariners, unless they have, at the same time, insured against *barratry*;[†] though, in many other places, he admits the rule to be otherwise.

In policies of insurance, expressly against *fire* alone, the insurers are answerable for all losses by fire, though occasioned by the negligence and fault of servants, or, in other words, for every loss, not caused by the fraud of the insured. In losses by fire, it must, in almost every case, be occasioned by carelessness, or inattention, or some fault or neglect of servants; and it is the very object of the contract to guard the insured against the consequences of such negligence and faults of others. In the case of *Boyd* v. *Dubois*,[‡] tried before Lord *Ellenborough*, there being no evidence of the cause of the fire, the plaintiff had a verdict.

In *Goix* v. *Knox*,[§] where the policy was against " *all risks*," the court said they should construe the policy liberally, as applying to all losses, except such as arise from the *fraud of* the insured. The same rule of construction was adopted in *Radcliff* v. *The United Ins. Co.*[||] True, it is a principle in marine insurance, that it does not extend to the acts or faults of the insured, as bad stowage, and the like, because they are not perils insured against. So, in case of deviation, through fault of the master, that puts an end to the contract. In these and other cases, in which the court have held that the insurer was not liable, it was because the cause of the loss was not a peril insured against.

2. Fraud or gross negligence on the part of the master or mariners, is *barratry*. The sticking the candle on the side of the binnacle was an act of wilful and gross negligence. Sailing out of port, without paying the port duties, has been held an act of negligence amounting to barratry.[**] Barratry may consist in acts of omission as well as commission. Neglect of duty, as well as criminal conduct, will amount to barratry. It is not requisite that the master or mariners, should propose any gain to themselves by their neglect or violation of duty.[††] Where a person knows his duty, and neglects it, it is that gross negligence which amounts to fraud; *lata culpa dolo equiparatur*.

NEWYORK, October, 1816.

GRIM v. THE PHOENIX INS. Co.

[*] *Emerig. tom.* 1. p. 434.
[†] *Pothier. Trait. des Ass. No.* 53.

[‡] 3 *Campbell's N. P. Rep.* 133.

[§] 1 *Johns. Cases*, 340.

[||] 7 *Johns. Rep.* 46.

[**] *Knight* v. *Cambridge*, 3 *Mod.* 231. S. C. 1 *Str.* 581. S. C. 2 *Ld. Raym.* 1349. See *Valleijo* v. *Wheeler, Comp.* 153
[††] *Stamma* v. *Brown*, 2 *Str.* 1173. 1 *Term Rep.* 259. 330. 7 *Term Rep.* 505. 3 *Johns. Rep.* 272. 11 *Johns. Rep.* 40.

NEWYORK,
October, 1816.

GRIM
v.
THE PHOENIX
INS. CO.

Then, admitting the negligence to be so gross as to amount to barratry, can the plaintiff recover under a count, alleging the loss to be by fire? A loss by fire, is one of the perils included in the policy; and the defendant, to defeat the action, sets up another cause of loss, to wit, barratry, which is, also, one of the perils insured against. In *Heyman* v. *Parish*,* this very question arose before Lord *Ellenborough*, who held that where the plaintiff declared for a loss by the perils of the sea, and the vessel was proved to have been shipwrecked, the plaintiff might recover, though the loss was occasioned by the wilful misconduct of the captain, amounting to barratry : the same principle was laid down by this court, in *Gardere* v. *The Columbia Insurance Company*.† Barratry is no defence to an action for the loss by the perils of the sea, or by fire.

*2 Campb. Rep.
149.

†7 Johns. Rep.
514.

*T. A. Emmet* and *Hoffman*, contra, contended, that the insurers were not liable for a loss occasioned by the negligence or misconduct of the master or mariners. Even if barratry was not enumerated among the risks, the insurers would not be liable for a loss in such a case. *Marshall* clearly marks the distinction between the law of *England*, and that of other countries. In *France*, and other countries,‡ barratry is a term more comprehensive than in the *English* law.§ By the law of *England*, no fault of the master or mariners amounts to barratry, unless it proceed from a fraudulent purpose.‖ In the case of *Boyd* v. *Dubois*, the cause of the fire was unknown, and the burden of proving it to have been occasioned by the fault of the master or mariners, rested on the defendant, and no fault being shown, the plaintiff had a verdict. So, in *Carruthers* v. *Gray*,** where the ship and goods were seized by the *Russian* government, the defendant undertook to prove that the seizure was owing to the omission of the captain to mention the goods insured in the manifest of the cargo. In *Cleveland* v. *The Union Insurance Company*,†† the supreme court of *Massachusetts* held that the insurers were not liable for a loss by capture, arising from the negligence of the master in leaving the ship's register, and other papers, at the *Isle of France*, an intermediate port in the voyage insured. Whatever may be the law of other countries, it is settled in *England*, and here, that barratry is an act done with a fraudulent or criminal intent, or *ex maleficio*.‡‡

In *Dœderer* v. *Del. Ins. Co.*§§ where negligence seems to be

‡ Marshall on
Ins. 518.
‖§ Marshall, 518.
Casaregis, disc.
1. n. 77.

‖ 3 Comp. Rep.
133.

** Ib. 142.

†† Mass. Rep.
308.

‡‡ Earl v. Row-
croft, 8 East,
126.
§§ Condy's ed.
Marsh. 524, in
note.

suggested as amounting to barratry, the court merely say, that gross negligence is evidence of fraud. If so, it may be rebutted by other evidence, and must go to a jury, who are to decide whether there was fraud or not. It could not be enough, to entitle the plaintiff to recover, to aver a loss by the negligence of the master or mariners.* There must be fraud, or criminality. In *Cook* v. *Com Ins. Co.*† the court define barratry to be every species of fraud, concerning either the ship or cargo, committed by the master, in respect to his trust as master, to the injury of the owner. In *Phyn* v. *The Royal Ex. Ass. Co.*‡ the distinction is taken between a case of gross ignorance or negligence, and fraud; and the jury having negatived the fraud, the defendants had a verdict. In *Law* v. *Hollingsworth*,§ the insurers were held discharged, on the ground that there was no pilot on board, which was a breach of the implied warranty in the policy. So, in *Pipon* v. *Cope*,|| Lord *Ellenborough* considered the plaintiff as having been guilty of gross negligence, in suffering repeated acts of smuggling, which was the cause of the seizure and loss, and he could not, therefore, recover. This neglect is to be considered as a breach of the implied warranty on the part of the assured, to use reasonable diligence and care in regard to the property insured.

The word *fire*, used in the enumeration of the risks in this policy, is subject to the same rules of interpretation as have been settled in regard to the other perils enumerated: and it is a principle, pervading the whole law on this subject, that the insurers are not liable for a loss occasioned by the fault or negligence of the insured, his agents or servants.** In policies of insurance against fire only, certain exceptions are stated with great precision; but in policies of marine insurance, no exceptions or circumstances whatever are stated. The analogy, therefore, between the two kinds of insurance does not hold.

Then, what are the facts in this case? Two acts of negligence are shown, either of which is sufficient to discharge the defendants; first, that of the master, in the bad or improper stowage of the *gunpowder*, in a place so exposed to accident; second, that of the mate, and one of the mariners, in putting the lighted candle against the side of the binnacle. The plaintiff proves a loss by fire; the defendants show negligence and misconduct in the master and mariners. So, in *Boyd* v. *Dubois*, Lord *Ellenborough* said, that if the defendant could show that the hemp was put on

NEWYORK,
October, 1816.

GRIM
v.
THE PHOENIX
INS. Co.

* 1 Str. 581. 3 Mod. 231. 8East, 135, per Ld. Ellenborough.
† 11 Johns. Rep. 40.

‡ 7 Term Rep. 505.

§ 7 Term Rep. 160.

|| 1 Campb. N. P. 434.

** Per Kent, J. Vos & Graves v. United Ins. Co. 2 Johns. Cases, 180—187.

NEWYORK,
October, 1816.

GRIM
v.
THE PHOENIX
INS. CO.

board in a state liable to effervesce, and it did effervesce, and generate the fire, that would prove such a negligence of the insured as would prevent his recovery for the loss.

*Wells*, in reply, insisted, that the plaintiff, *prima facie*, was entitled to recover, and that the defendants, to discharge themselves from the loss, must show clearly and satisfactorily, that it had been occasioned by the fault or misconduct of the plaintiff. The cases cited by *Marshall*,* to show for what acts of the insured, or his agents, the insurers were not liable, are all cases of *ignorance* or *mistake*; but the present case is an instance of wilful and palpable carelesness. The analogy between marine insurances, and land insurances, against fire only, is, in this respect, complete. The master and mariners, in relation to the owner of the ship, stand in a similar situation to that of domestic servants in regard to the master of a house. Every event of fire must proceed from the act of God, as lightning, or from the carelessness and negligence of those who have charge of the subject. If insurers are not answerable for losses by fire, occasioned by the carelesness of servants, then they are responsible only where it is caused by lightning, or the act of God. But the law has not been laid down to that extent. Fire is a peril insured against, and where it is the proximate cause of loss, it is unnecessary to look for the remote cause. Whenever a fire is caused by the carelesness of servants, masters or mariners, the insurer is answerable, whatever may be the degree of that carelesness or neglect. It need not be a wilful act committed. The omission of a direct and positive duty is equivalent. It is enough that the omission of duty be the cause of loss by one of the perils insured against. It can be no defence to say that the negligence was gross, and, therefore, a fraud. Placing the candle against the side of the binnacle, and leaving it in that situation, was equally careless as to have thrown it into the companion-way among the kegs of powder. If it is barratry to set fire to the vessel, it is barratry to omit the means of preventing it, by acts in the power of the party to perform. It is said here was bad or improper stowage; but it was proved to be the common practice, in this trade, to carry powder in that manner. The loss was not occasioned by bad stowage, but the carelesness of the mariners.

It is said, that gross negligence is only evidence of fraud:

*Marsh. on Ins.
487, 488. 690.
Park on Ins. 62.
6 Term Rep. 656.*

but¦ when the fact of gross negligence is established, the con-
clusion of law irresistibly follows that it is fraud. The plaintiff
must aver fraud, not negligence, and when gross negligence is
shown, the fraud is established.

THOMPSON, Ch. J., delivered the opinion of the court. The loss in this case is alleged to have been by fire. The policy contains the usual clause, specifying the perils insured against. The facts in this case briefly are, that the vessel being partly laden with powder, a candle was carelesly put up by the binnacle, which took fire, and communicated to the powder, and the vessel was blown up, and lost. The question is, whether the underwriters are responsible ? On the part of the assured, it is contended, in the first place, that this was a loss by *barratry;* and if not, still, under the general words in the policy, the underwriters are answerable for all losses by fire.

It appears to me impossible to consider the negligence by which the loss was occasioned as amounting to barratry. It would be absurd to suppose the powder was set on fire by design, and the vessel blown up intentionally, as it must, most probably, have caused the destruction of the whole crew.

It is well settled, that an act, to be barratrous, must be done with a fraudulent intent, or *ex maleficio.* Barratry is a fraudulent breach of duty, in respect to the owners. This is the established doctrine, both in the *English* courts, and in our own. (8 *East's Rep.* 138. 2 *Caines' Rep.* 71.) We look, in vain, for any one fact in the case, indicating a fraudulent intention. It is, therefore, a loss occasioned by pure negligence.

The next inquiry is, whether such a loss comes within the policy : I think it does not. No adjudged case is to be found directly in point ; and all that is to be collected from the elementary writers upon the question, is rather matter of inference. It is laid down by *Marshall,* (*Marsh. on Ins.* 421.,) that a loss occasioned by fire, which is *merely accidental,* and not imputable to any fault of the master or mariners, is a loss within the policy. This is the rule in *England.* The inference necessarily to be drawn from it is, that when the fire is occasioned by the fault of the master or mariners, a loss, occasioned thereby, is not to be borne by the underwriters. In *France* the underwriter is not held answerable in such case, unless, by the policy, he is liable for barratry. But in *France,* barratry comprehends

NEWYORK,
October, 1816.

GRIM
v.
THE PHOENIX
INS. CO.

every fault, either of the master or mariners, by which a loss is occasioned, whether arising from fraud, negligence, unskilfulness, or mere imprudence. (*Marsh.* 445.) In *England,* if the loss could be attributed to barratrous misconduct, the under-writer would be held liable. It has always been matter of surprise, that underwriters should insure the good conduct, in any case, of the master and crew, with the appointment of whom they have no concern; (1 *Term Rep.* 330. 8 *Johns. Rep.* 277.;) and they would not be responsible for their conduct were it not for their express stipulation. The master and mariners are not the agents or servants of the underwriters, so as to warrant the application of 'the general rules of law in such cases. The liability of the underwriter for their conduct depends upon the stipulation in the policy, which embraces only the case of barratry. If, by the general rules of law, underwriters are responsible for the mere carelesness and negligence of the master and mariners, it would seem to follow, as a necessary part of the same rule, that they would be liable for their fraudulent misconduct; and, of course, it was entirely unnecessary to insert in the policy any express engagement to become answerable for losses by barratry. The very circumstance of assuming the risk of barratrous conduct, affords a strong presumption that the underwriters are responsible only for such misconduct as amounts to barratry.

Underwriters have no concern with the competency or skilfulness of the master or crew. These are matters which concern the owners; and any deficiency, in this respect, renders the vessel unseaworthy. If a master, from ignorance or unskilfulness, or from any motive not fraudulent, should depart from the proper course of the voyage, and a loss happen thereby, the underwriter would not be liable, by reason of the deviation. (*Marsh.* 446.) There are many cases of injury and losses arising from the fault and negligence of the master and mariners, where the remedy is against the master or owners, as by bad stowage, wet, and many others. (*Marsh.* 156.)

Although the insurance is against loss by fire generally, yet this must be understood as relating to fire occasioned by some means or act for which the underwriters are responsible. The same rule must be applied to this risk as to the other enumerated risks in the policy. In the case of *Vos & Graves* v. *The United Insurance Company,* (2 *Johns. Cas.* 180.,) the insurance was

against capture; and, although the vessel was captured, still
the underwriters were held not to be responsible, because the
capture was occasioned by the misconduct of the master, in
sailing towards, with an intention to enter, a blockaded port.
*Kent,* Justice, in his opinion, says, such an attempt takes
away from the assured his right to recover; for he never can
be allowed to indemnify himself upon an innocent party, from
the consequences of his own want of skill, or from his negligence
or folly. The act of the master must be referred to his princi-
pal, who appoints him; and, whenever a loss happens through
the master's fault, unless that fault amounts to barratry, the
owner, and not the insurer, must bear it. That the risk of
fault in the master (barratry excepted) is not a risk enumerated
in the policy; and it would be very unreasonable, that the in-
surer should be holden, beyond his *express* undertaking, for
the fault or folly of the master, whom the insured selects and
controls. So, in the case of *Cleveland* v. *The Union Insurance
Company,* (8 *Mass. Rep.* 308.,) in the supreme court of *Massa-
chusetts,* the loss was by capture, occasioned by the negligence
of the master, in leaving the ship's register in the *Isle of France,*
and the underwriters were held not to be answerable. *Sedgwick,*
Justice, said it could not be pretended, that this neglect was a
risk expressly insured against, or any risk assumed by the un-
derwriter; and he goes on to show that the remedy must be
against the owner; that he is responsible for all losses arising
from the negligence, ignorance, or wilful misconduct of the
master, that do not amount to barratry. He says, expressly,
that the underwriters are not answerable for a loss resulting from
the gross negligence or ignorance of the master. The observa-
tions made in these cases apply, with great force, to the one now
before us, and go to establish the principle, that underwriters
are not responsible for any fault, negligence, or misconduct of
the master, or mariners, which does not amount to barratry. And
that their liability even for barratry, arises from its being an
express stipulation in the policy. *Park,** (24.,) after enumera-
ting the perils designated in the policy, observes that, although
the words are so general, there is a great difference between
damage sustained by goods, from injuries on board a ship, and
that which occurs from external accident; that the insurer is
liable for the latter, but, with respect to the former, as they are

NEWYORK,
October, 1816,

GRIM
v.
THE PHOENIX
INS. CO.

* 6th ed. p. 30.

NEW YORK,
October, 1816.

neglects attributable to the master, the ship, and not the insurer, ought to be answerable.

There are many losses, occasioned by some of the perils enumerated in the policy, which may happen under circumstances that would not make the underwriters chargeable. These general terms are used, in reference to the established rules of law; and it is with an eye to those rules, that they must be expounded. Insurance against fire is not the exclusive object of a marine policy. It is enumerated among the perils, in reference to the settled principles of marine law; and we must look to that law, to ascertain the excepted cases. None of the observations here made are intended to apply to land insurances against fire. There the sole object is indemnity against loss by fire; and the general and settled rules of law, applicable to this subject, must be resorted to in construing such policies.

Upon the whole, therefore, the result of my opinion is, that this cannot be considered a loss by barratry, but by the carelessness and negligence of the crew, for which the underwriters are not responsible; and this is the opinion of the court. The defendants are, accordingly, entitled to judgment.

> Judgment for the defendants.