WATERS (DIXON v.). See Case No. 3,936.

WATERS (EDDS v.). See Case No. 4,275.

WATERS (HAZEL v.). See Cases Nos. 6,283, 6,284.

## Case No. 17,266.

### WATERS v. MERCHANTS' LOUISVILLE INS. CO.

[1 McLean, 275.] [1]

Circuit Court, D. Kentucky. Nov. Term, 1836.

FIRE INSURANCE—POLICY ON VESSEL—NEGLIGENCE OF OFFICERS—BARRATRY.

1. Where fire is one of the enumerated risks in a policy on a steamboat, &c. a loss by fire will charge the underwriters, though occasioned by the negligence of the officers or crew.

[Cited in National Ins. Co. v. Webster, 83 Ill. 472.]

2. If the negligence be so gross as to authorize the presumption of fraud, which would constitute barratry, the underwriters are not liable, unless the policy expressly insures against barratry.

3. A policy against fire on land, will, in the event of loss, hold the underwriters liable, though the fire was the result of negligence by servants and others.

4. And the same rule of construction should be applied to marine policies.

5. The rule of construction is of general interest, as it refers as well to our foreign, as our internal commerce, and it should be uniform.

At law.

Mr. Guthrie, for plaintiff.

Mr. Crittenden, for defendants.

McLEAN, Circuit Justice. This action is brought on a policy of insurance underwritten by the Merchants' Louisville Insurance Company, which insured to the plaintiff, "lost or not lost, in the sum of six thousand dollars, on the steamboat Lioness, engine, tackle and furniture, to navigate the western waters, usually navigated by steamboats, particularly from New Orleans to Natchitoches on Red river, or elsewhere, the Missouri and Upper Mississippi excepted, (Captain [William] Waters having the privilege of placing competent masters in command, at any time. six thousand dollars being insured at New Albany, Indiana,) whereof William Waters is at present master; beginning the adventure upon the said steamboat, from

[1] [Reported by Hon. John McLean, Circuit Justice.]

the 12th of September, 1832, at twelve o'clock, meridian, and to continue and endure until the 12th of September, 1833, at twelve o'clock, meridian, (twelve months.) The policy provided that "it shall be lawful for the said steamboat, during said time, to proceed to, touch and stay at any point or points, place or places, if thereunto obliged by stress of weather, or other unavoidable accidents, also, at the usual landings for wood and refreshments, and for discharging freight and passengers, without prejudice to this insurance." "Touching the adventures and perils which the aforesaid insurance company is contented to bear; they are, of the rivers, fire, enemies, pirates, assailing thieves, and all other losses and misfortunes, which shall come to hurt, detriment, or damages of the said steamboat, engine, tackle and furniture, according to the true intent and meaning of this policy." The declaration alleged that the said steamboat Lioness, her engine, tackle, and furniture, after the execution of said policy, and before its termination, to wit, on the 19th of May, 1833, on Red river, about one hundred miles below the mouth of Bon Dieu river, whilst she was on her voyage from New Orleans to Natchitoches, Louisiana, on Red river, were, by the adventures and perils of fire and the river, exploded, sunk to the bottom of Red river aforesaid, and utterly destroyed; so as to cause and make it a total loss." Several pleas have been filed alleging that the Lioness was loaded in part with gun powder, and that the officers and crew at the time of the explosion of the vessel so negligently, unskilfully and carelessly conducted themselves, in managing the vessel, and in carrying a lighted candle or lamp in the hold of the vessel, where the powder was stowed, as to communicate fire to the powder, which caused the explosion and loss of the vessel. To these pleas the plaintiff demurred, and the defendants joined in demurrer.

The pleadings in this case present the question whether the defendants are liable on the policy, for a loss of the vessel through the negligence of the officers and crew. There is no insurance in the policy against barratry, but the negligence alleged in the pleas does not amount to barratry. Barratry is an act committed by the master or mariners of a ship, for some unlawful or fraudulent purpose, contrary to their duty to their owner, whereby the latter sustains an injury. It follows from the terms of this definition, that barratry cannot be committed by a master who is owner for the voyage, because he cannot commit a fraud against himself. In this case Waters, the assured, appears to be the owner. But, independent of this consideration, there is no such negligence alleged in any of the pleas that amounts to fraud, and this is necessary to constitute barratry. Until within a few years, actions on policies of insurance were rarely brought in the west. Indeed before the introduction of steam on our waters, such contracts were rarely, if ever, entered into. A policy of insurance is a special contract, subject to those rules of con-

struction which have been long settled in commercial countries, and of which all who make such contracts are presumed to have notice. It is said they are to be liberally construed to effectuate the intention of the parties. And in this respect, there may have been some deviation from the rigid rules which are applicable to other special contracts. It is believed that the precise point raised in this case, has not been settled in this country or in England.

The question whether negligence of the officers and crew, shall, in case of loss, discharge the underwriters, where barratry has been insured against, has often been raised and decided in both countries. In the case of Grim v. Phoenix Ins. Co., 13 Johns. 451, the court decided, that negligence which did not amount to barratry, where barratry was insured against, did not excuse the underwriters. And this decision has been followed up by the supreme court of Ohio, and by all the other state tribunals.

The question however is one of general and national importance, as it is intimately connected with our foreign as well as our internal commerce, and the rule should be uniform and analogous to other questions of insurance which have been long settled. In the case of Busk v. Royal Exchange Assur. Co., 2 Barn. & Ald. 73, the court decided that, where barratry was insured against, negligence would not excuse the underwriters; and in the argument they laid much stress on the fact, that the undertaking against barratry, must necessarily include minor faults. And upon this ground the American authorities have generally proceeded. And the inference would seem to arise from the course of argument in the cases decided, that if barratry had not been insured against, the insurers would not have been liable for a loss, by the negligence of the crew. But the attention of the court was not drawn, necessarily, to that point; and it would be extremely dangerous, from the general language used by courts in reference to a particular point, to infer an authority against a position not involved in the case. The supreme court of Ohio, it is stated at the bar, have decided recently that negligence in the officers and crew will excuse the underwriters from liability in case of loss, where there is no insurance against barratry. Not being favored with a perusal of the opinion of the court, the reasons which influenced their decision are not known. It is presumed, however, that they have followed the strong intimations in the New York decisions, that to charge the insurers for negligence, the policy must cover barratry.

It has been long settled in England and in this country, that a policy against fire on land, covers the negligence of servants. A liability short of this would render land policies of little value; for a fire rarely occurs which may not be traced to some negligence or inattention of servants or others. This is peculiarly the case in the country, where the building insured does not stand connected with other buildings. [Columbia Ins. Co. v. Lawrence] 10 Pet. [35 U. S.] 517, 518. Fire is the risk insured against, and the building is destroyed by fire. Now the underwriters in a land policy are liable, though it be proved that the fire occurred through negligence. Fire was the proximate, negligence the remote cause of the loss. And why should not the same construction be given to a marine insurance? The language of both policies in regard to the risk of fire, is precisely the same; and why should insurers be held liable, on a land policy, and excused from liability, on the same state of facts, on a marine policy. Fire is the proximate cause in both cases, and negligence the remote cause in both. Why then should the rule of construction be different? As before remarked, the construction of the land policy has been settled in this country and in England, and should not this lead to the application of the same rule of construction, under the same circumstances, to marine policies? The question of negligence, as applicable to the latter policies, remains open, and should be decided by the analogies of the law and reasons of the case. Now all analogy would seem to require that two instruments of the same nature, clothed in the same language, and intended for the same purpose, the one on land, and the other on water, should receive the same construction. And as the rule of construction has been settled on the land policy, it would seem to follow as a matter of course, that the same construction should be given to the marine policy. And the construction given is sustained by reason and propriety. It is within the very language of the instrument, and to hold that negligence shall secure from liability in the one case and not in the other, involves the most palpable inconsistency. In favor of this distinction there is no analogy and no direct decision. The only authority known, if indeed loose expressions of judges made in reference to another point, can be called authority, is found in the adjudications referred to. Cases where the judges hold that insurance against barratry will cover negligence, and seem to place great stress on the fact that the policy covers barratry. But they did not decide, nor was the point involved in any of the cases, that the underwriters would not be liable for a loss, by one of the enumerated risks, though negligence was the remote cause of it. Where there has been fraud or design in the loss which would amount to barratry, the insurers would not be liable, unless the policy contains an express insurance against barratry. And in a land policy the insurers are not liable, if the assured are guilty of fraud or design in the destruction of the building.

In [Columbia Ins. Co. v. Lawrence] 10 Pet. [35 U. S.] 517, above referred to, the supreme court say: "The next question is, whether a loss by fire, occasioned by the fault and negligence of the assured, their servants and agents, but without fraud or design on their part; is a loss for which the underwriters are liable. In regard to marine insurance, this was formerly a question much vexed in the English and American courts. But in England the point

was completely settled in Busk v. Royal Exchange Assur. Co., 2 Barn. & Ald. 82, upon the general ground, that causa proxima, non remota, spectatur; and therefore that a loss whose proximate cause is one of the enumerated risks in the policy, is chargeable to the underwriters; although the remote cause may be traced to the negligence of the master and mariners. Although in the policy in that case, the risk of barratry was also assured by the underwriters; yet it is manifest that the opinion of the court proceeded on the broad and general ground. The same doctrine was afterwards affirmed in Walker v. Maitland, 5 Barn. & Ald. 171, and Bishop v. Pentland, 7 Barn. & C. 219, and is now deemed incontrovertibly established. The same doctrine was fully discussed and adopted by this court in the case of Patapsco Ins. Co. v. Coulter, 3 Pet. [28 U. S.] 222." This, it is true, is not an adjudication on the point, as it was not involved in the case, but it may be considered as a strong intimation of the view of the court on the question now under examination; and as it is reasonable and analogous to the rule well established in construing land policies, it is entitled to great weight.

From these views, the defendants cannot be excused from the negligence of the officers or crew of the Lioness; and both the judges concur in this result; but as the question is new and important, at the suggestion of the counsel, the judges will certify to the supreme court, the following points:

1. Does the policy cover a loss of the boat by fire caused by the barratry of the master and crew?

2. Does the policy cover a loss of the boat by fire caused by the negligence, carelessness, or unskilfulness of the master and crew of the boat or any of them?

3. Is the allegation of the defendants in their pleas, or either of them, to the effect that the fire, by which the boat was lost, was lost by the carelessness or the neglect or unskilful conduct of the master and crew, a defence to this action?

4. Are the said pleas, or either of them, sufficient?

The circuit court entertained no doubt, that if the plea had been skilfully drawn, which alleged that gun-powder constituted a part of the cargo; that such an article was not usually conveyed on steamboats, and that by its transportation the risk was greatly increased, all of which was unknown to the underwriters, they would have been excused from liability, provided, the facts thus alleged had been admitted.

To the points certified the supreme court answered, that the policy does not cover barratry. That it does cover a loss of the boat by fire caused by negligence. That the pleas in this respect are not a defence to the action, and that the matters set out in them constitute no bar. [See 11 Pet. (36 U. S.) 213.]

On the return of the cause to the circuit court, a judgment for the plaintiff was entered.