* Judge G-rimke
delivered the opinion of the court:
This was an action of assumpsit on a policy of insurance on thá *314 boat and cargo of the plaintiffs from Duncan’s Falls, in the Muskingum, to the city of New Orleans. The boat left the Falls, and while pursuing her voyage, was wrecked on Cheadle’s Island in the Muskingum river. On the trial a great deal of testimony was ■exhibited in relation to the condition of the boat, the skill and ■capability of the captain and crew, and their conduct immediately preceding the disaster.' A verdict was found for the plaintiffs, -and a motion was made for a new trial, because the testimony •showed that although the immediate cause of the loss was a peril of the river, yet that this accident might have been prevented by ■the exercise of a proper degree of care and diligence on the part •of the crew. And thus is presented the question so much discussed of late years, in the English and American courts, whether the proximate or the remote cause of the loss is to be taken into consideration in deciding on the liability of the insurers. The question has already been twice determined by this court, in Lodwick v. Ohio Ins. Co., 5 Ohio, 433, and again in Howell v. Cincinnati Ins. Co., 7 Ohio, 281, in both which it was held that the remote ■and not merely the proximate cause of the loss is to be regarded in order to settle the respective rights of the insured and the underwriters. And such I apprehend, was, until very recently, understood to be the law in Great Britain. Thus in Law v. Hollingsworth, 7 D. & E. 160, a ship bound to the port of London, which had received a pilot on board, but dropped him before she reached her mooring in the river Thames, after which an accident happened and she was sunk, it was held that for this negligence in not having the pilot on board the insurers were discharged. The exercise of foresight and skill in an emergency where the vessel is endangered, and where it is not the usage to receive a pilot, ■stands in the place of the pilot; and I do not see but what, if the want of one is sufficient to defeat the right of recovery, that the want of the other should have the same effect also. It is true the mind, fertile in expedients, may make distinction between the two •cases, but I can see none broad enough to -authorize the application of a different rule to- them. Rich v. Parker, 7 D. & E. 705, was decided on the same principles as the former case. The vessel was warranted to be American, but the master having neglected to obtain a passport for a part of the voyage, in *conformity with the treaty between France and America, this was .held to be a good defense against a loss arising from capture. It *315 is doubtful whether the want of a pilot in the first case, or the want of a passport in the second, were at all instrumental in the-loss. It was a mere possibility, especially in the latter casé, so-that a cause the most remote imaginable, was taken into consideration in deciding on the liability of the underwriters. It is unnecessary to say whether the principles may not have been pushed too far in the last case; suffice it to say, that the English courts-have been in the habit of looking beyond the mere peril insured against; it has not been sufficient that a vessel was stranded or captured, where the policy, covers a loss of this kind. The whole chain of causation which may have led to-the catastrophe, so far as it is traceable by the mind, is considered as of the utmost moment in determining the respective rights of the parties.
The subject has undergone a good deal of investigation in the American courts, and it has generally been held that insurers are not responsible for the negligence or misconduct of the master or mariners, unless they, amount to barratry, and unless a clause against barratry is inserted in the policy of insurance. Thus, in Green v. Phoenix Ins. Co., 13 Johns. 451, where a vessel was insured among other risks against fire, and during the voyage a seaman carelessy put a lighted candle in the binnacle, which took fire and communicated to some powder, in consequence of which the vessel was blown up- and lost, it was held that the insured were not entitled to recover. No case can be more directly in point, for the purpose of establishing the position that the remote, and not merely the proximate cause of the loss, is to be taken into-consideration, in ascertaining whether the peril insured against has occurred. So also in Cleaveland v. Union Ins. Co., 8 Mass. 308, where the vessel was captured in consequence of the negligence of the master in leaving the ship’s register in the Isle of France, it was held that it 'was not enough that a loss by capture was one of the the risks insured against; that the cause of the capture should be inquired into, and if that was in reality thenegleet of the master that the underwriters were not responsible. These cases were discussed, both upon principle and authority,', and although a principle may sometimes be prematurely decided, that is, before a sufficient experience of all the inconvenience». which it may give rise to, yet this can not be said to *have been the case on these occasions. Indeed, I believe it may be .asserted, that until some recent decision in the English courts, the- *316 whole current of British and American authorities were consistent and uniform on this subject. Perhaps the contradiction which is so often to be found in the books on the same question of law, is as much to be ascribed to the mere ingenuity of the human mind, in inventing and fancying new views as to the acquisition of a greater share of wisdom and experience. And hence, it becomes the bounden duty of a judge not to be too easily captivated by late authorities, because they declare a different rale from what had been before established, but to ascertain how far they are founded in fair and legitimate reasoning, and how far they are the result of a love of refinement, which is sometimes apt to seize the •mind of the greatest and most practiced inquirer after truth.
The recent English cases are Busk v. Royal Ex. Ins. Co., 2 B. & A. 72; Walker v. Maitland, 5 B. & A. 171, and Bishop v. Pentland, 7 B. & C. 219. The first of these cases it is not only difficult to reconcile with any rule of law previously established, but what is more to be regretted, it is difficult to reconcile it with itself. The loss arose from the negligence of the mate in lighting a fire in the cabin. There was a clause in the policy against barratry; and Bayley, J., after investigating the doctrine on that subject, and showing that although the term barratry is, by the French writers, used in a more large and comprehensive sense than it is -in the English law, inasmuch as the former understand it to mean negligence as well as willful misconduct, says: “ When we fi-nd that the insurers make themselves answerable for the willful misconduct of the master, it is not too much to say that they meant to indemnify the assured against fire proceeding from the negligence of the master and mariners,” which is precisely the reverse of the conclusion to which one would have supposed that his mind should have been brought. For if the word barratry does not comprehend negligence, how can it be argued that a warranty against the former only amounts to a warranty against the latter also. It is not like a genus containing the species. For barratry and mere negligence are not different in degree; they are different in kind. The argument would have been irresistible the other way; if the judge had come to the conclusion that, as the parties had been careful to guard against willful misconduct only, that it was not *their intention to protect against negligence; that if the express warranty did not absolutely extinguish all implied warranties which might be supposed to arise out of the *317 policy; that at any rate it was not allowable to infer the existence of the latter from the existence of the former only. It is not because the general principles of law authorize a recovery against underwriters where negligence is the remote and real cause of the loss, but a secret intention to warrant against it is attempted to be inferred, because the policy of insurance contains a warranty of an entirely different import. At any rate, it must be admitted that the two views are so confounded together that it is impossible to say what would have been the decision of the court if there had been no clause against barratry in the policy.
The case next in order is Walker v. Maitland. The loss arose from the vessel having been beaten to pieces by the force of the winds and waves — an accident which would not have happened if the crew had done their duty, but the mate went to sleep, and soon after the whole of the watch on duty went to sleep also. Abbott, C. J., says: “No doubt the owner, under this policy, expected to be indemnified against the loss in question.” An expectation.to be indemnified and a right to be indemnified are, however, very different things, though it is difficult to see how even the former is established, for he goes on to say that “ it may appear extraordinary that the underwriters should undertake to indemnify the assured against the negligence of the master and crew,” and then concludes as in the former ease, that they do so because barratry is a protection against willful misconduct; that is; barratry means negligence, and yet negligence is not comprehended within the meaning of barratry.
He proceeds to say that he is afraid of laying down the rule that negligence in the crew will discharge the underwriters; “it will introduce an infinite number of questions as to the quantum of care which, if used, might have prevented the loss.” This, then, is one of the difficulties felt by the English courts, and which has occasioned a departure from the earlier cases decided by them. But is this difficulty really greater than occurs in a multitude of other eases, which are continually arising, in which the understanding is tasked, and which, in order to be correctly decided, demands the exercise of a sound judgment and clear discrimination ? The whole law of ^bailment, which is of such constant application, depends, in all its ramifications, upon the greater or less degree of care or negligence; and yet no one has ever ventured to sweep away its nice and intricate distinctions, merely because *318 it required much thought in order to apprehend and apply' ‘them.
The next case is Bishop v. Pentland, 7 B. & C. 219. The ship was lost by stranding, through carelessness of the mate. There •does not appear to have been any clause in the policy against barratry. And yet Bayley' says, “ the two former cases establish as a principle that the underwriters are liable for a loss, the proximate •cause of which is one of the enumerated risks, though the remote •cause maybe traced to the conduct of the masters and mariners.”. And yet in both the former cases, the greatest reliance ,is placed upon the insertion of the clause against barratry. It would not, ■perhaps, be fair to say of these cases that they are carelessly and loosely decided, when one considers that the king’s bench have now a docket of five hundred cases to dispose of, instead of, as in the time of Lord Mansfield, one of only forty. But it must be admitted that they are not so convincing and satisfactory as could be desired.
In the Columbia Ins. Co. v. Lawrence, 10 Pet. 508, the late determinations of the English courts appear to be approved of. That was an insurance on a house, as to which it has sometimes been said that the law has always been understood to be that the proximate cause of the loss is alone regarded, whatever it may have been as to marine insurances. Whether this is truly the case, it is entirely'unnecessary to decide. It is admitted that there is not a -single case to be found in the books in which the point has been •determined. Mr. Justice Story, in the case last cited, says, “it is manifest that the opinion of the court in Busk v. Anderson proceeds upon the broad and general ground ” that the proximate, and not the remote cause of the loss is regarded; and yet, such does not seem to be the fact, from the examination which I have given to that case. Indeed, it is more than doubtful, whether any such decision would ever have been made if the clause against barratry had not been inserted. All these remarks, to which I have .alluded, in the opinion of the court in 10 Peters, were, however, ■clearly extrajudicial, as the peculiar wording of the policy was alone deemed sufficient to authorize a recovery against the underwriters.
*It is evident that in marine and river insurances, there is a closer connection between the insured and the crew who man the vessel than there can possibly be between these last and the in *319 surera. The crew are in reality the agents of the insured, and are entirely independent of any control from the insurers. It. will contribute, therefore, much more to the maintenance of per- ■ feet good faith, if the latter are discharged from liability, where the loss of the vessel has been occasioned by the negligence of the mariners. If, because the insured have selected a crew apparently capable, they are, therefore, to be absolved from any further care, the inevitable consequence will be that less care-will be used in the selection of the crew. Hands will generally be upon their best behavior at the time they are first employed, and it will be easy to say, in answer to any defense which the underwriters may make, that all the duty which was imposed upon the insured, in the first instance, has been discharged. The unseaworthiness of a vessel is sometimes not tested until she has been at sea many weeks and has encountered a storm. And in the same manner, the unseaworthiness of a crew is frequently not ascertained until some emergency has occurred which demands the exercise of self-possession, prudence, and discretion. In Andrews v. Essex Fire-Ins. Co., 3 Mason, 26, the same judge, who delivered the opinion in the case in-10 Peters, admits that this is a vexed question upon which opposite opinions have been expressed by very distinguished courts; and he also admits that the former decisions in England are not easily reconcilable with later ones.
In this state of the matter, it would seem to savor too much of vacillation and instability, which should forever be avoided in the determination of important principles of law, if a rule were now to be declared different from that which has hitherto been established to be the law in the courts of Ohio. It is admitted that different courts have taken very different views of this question, and it must also be admitted, therefore, that it is a question about, which the most enlightened understandings may be expected to-differ. That which is of the greatest importance, is that the law should be definitively’settled; parties can then accommodate their conduct and agreements in conformity with it, and in no event can they reasonably complain that they have been deceived. And, on the whole, the conclusion is that insurers are not responsible-. *for the negligence of the master and crew where this was> the remote, though the peril insured against was the immediate cause of the loss.
Another question was made, whether there should be a return *320 of any part of the premium. The general rule is, that if the-risk has once commenced, there shall be no apportionment or return of premium. The stipulation contained in this policy provides for a contingency which has never occurred.
New trial granted.