The opinion of the Court was delivered by
Tilghman C. J.
The plaintiff contends, that he is entitled to recover for a total loss on two grounds. 1st. That the voyage was broken up. 2d. That the schooner suffered damage to the amount of more than one-half her value. 1. In considering the first question, we'must remember, that there, is a great difference between an insurance on a ship] *507 and an insurance on her cargo, as it is not improbable; that some confusion may have been introduced, from not keeping our ideas of these two kinds of insurances entirely separate. The insurer on the ship, has nothing to do with the cargo. He undertakes, that the ship shall be sufficient for the performance of the voyage, and that he will make good any damage which she may suffer in the course of the voyage. But he does not undertake, that she shall perform the voyage, because the cargo may be lost, or other events may occur, which may render it unnecessary that she should perform it; An impression that the insurer was responsible for the voyage, has been made on the minds of many professional gentlemen, from the expressions used by Lord Mansfield, in the case s of Goss v. Withers, Hamilton v. Mendes, and Milles v. Fletcher. “ If the voyage be defeated, so as not to be worth further pursuit, if the salvage be high, and other expenses great, or if the underwriter refuses to bear these expenses, the insured may abandon.” The rule thus laid down, leaves the mind in great uncertainty. One can hardly suppose, that Lord Mansfield meant to say, the insured might abándon in every instance in which the voyage was defeated; and yet his words are very like it. He must have known very well, that in many instances, the voyage is defeated, by capture of goods belonging to a belligerent on board a neutral vessel, in which case, the cargo is condemned, and the ship restored; and yet it has never been supposed, that the insured could abandon the ship, after notice of restitution, and recover for a total loss. But whatever may have been intended, by the expressions I have cited, they are not true, if taken in their extent: they have been contradicted by subsequent decisions in the English as well as our own courts. That the insured could not recover for a total loss of the ship, though the voyage was broken up, was determined in the Court of King’s Bench in England, in Anderson, et al. v. Wallis, 2 M. & S. 240, and in Falkner, et al. v. Ritchie, 2 M. & S. 290. In the latter case, Lord Ellen-borough, after manifesting his dissatisfaction with the looseness and generality of Lord Mansfield’s words, asks, “ what has a loss of the voyage to do, With the loss of the ship?'’'' In conformity with the last English cases, are Oliver, &c. v. Marbury, 3 Mass. Rep. 37. Sadler & Craig v. Church, in the Supreme Court of New Tork, and Alexan *508 der v. The Baltimore Insurance Company, in the Supreme Court of the United States, 4 Crunch, 370. Or, to speak more properly, the last English cases were in conformity with ours, because ours preceded them. The case of Alexander v. The Baltimore Insurance Company, in particular, is °f the greatest authority, because the point was well considered, and the opinion of the Court was unanimous. Ch. J. Marshall, who declared the opinion, went so fully into the argument, and examined all the cases on the subject so particularly, that it would be an affectation of learning in us, to go over the same ground. I shall therefore confine myself to the conclusions drawn by the Supreme Court, which were these : — That it is an insurance of the ship, for the voyage; not an insurance of the ship and the voyage: an undertaking for the ability of the ship to prosecute the voyage, and to bear any damage which she may sustain during the voyage, not an undertaking that she shall, in any event, perform the voyage.” We stand upon firm ground, therefore, when we say, that the breaking up of the voyage is not necessarily a circumstance, which leaves it at the election of the insured, to abandon the ship, and throw her on the underwriters. Then as to the particular circumstances of this case, though the loss was total while the capture continued, yet the plaintiff was estopped, by his covenant, from abandoning, until the expiration of sixty days from notice of the capture, and before the expiration of that time, the .total loss had ceased, so far as capture was concerned, by the restitution of the schooner. And as to the ability to prosecute the voyage, she had been rendered sufficient by the repairs made at Plymouth.
S. But it has been argued on the part of the plaintiff, that although the ability of the schooner to proceed to Corunna, was restored by the repairs at Plymouth, yet he had a right to abandon her and resort to the defendants, because these repairs with other expenses connected with them, amounted to more than one-half the value of the vessel. It is the inclination of this Court, so far as is consistent with former decisions, to confine the contract of insurance to its true intent, which is to obtain an indemnity in case of loss, but not to be put in a better condition in consequence of loss. It will be desirable, therefore, to ascertain the actual loss, and give a compensation for it, in all cases where it can be done, with *509 out unsettling principles which have been fixed. That the insured may abandon where the damage exceeds one-half the value of the ship, is a general principle, subject however to exceptions. If the insurer will undertake to repair the damage, though exceeding one-half the value, he may do it, and the insured shall not abandon; because, if his ship be repaired, it is all he has a right to demand, and the more or less of cost, is immaterial to him. This is quite reasonable, and was decided by the Circuit Court of the United States for the district of Pennsylvania, in Hart v. The Delaware Insurance Company, 1 Marsh. 281. a. note. Now in the case before us, whatever may have been the amount of the damage, (a question not without considerable difficulty,) it was repaired at the expense of the defendants before the plaintiff gave notice of his intention to abandon. I say, at the expense of the defendants, because, there having been, without question, a total loss on the cargo, which the defendants have paid, the proceeds of sale in England, part of which were applied to the repairs of the schooner, belonged to them. This seems to bring the case within the exception which I have mentioned; for whether the defendants undertook to make the necessary repairs, or the repairs were made with their money without their undertaking, is immaterial. When the plaintiff gave notice of abandonment, he did not know precisely in what condition the vessel was : he did not know that she had been restored ; he did not know the probable amount of the damage. Even if the damages had not been repaired at that time, he afforded the defendants no opportunity of making an offer to repair them; the only notice he gave them was, that he should abandon because of the capture, by which the voyage was broken up and destroyed. It was not, from any thing that appears, until the schooner’s arrival at Boston, in the month of August, with passengers, that all the circumstances which occurred during her stay in England, were made known, either to the plaintiff or the defendants. On her arrival, she was at the disposal of the plaintiff, together with the freight which she had earned on the homeward voyage. Why then should the plaintiff be permitted to throw her on the defendants, by converting into an artificial total loss, that which in its nature was but partial? I can see no propriety in it, and am therefore of opinion, that the loss is not to be considered as total.