THE COLUMBIAN INSURANCE COMPANY OF ALEXANDRIA, PLAIN-
TIFFS IN ERROR *vs.* ASHBY AND STRIBLING, DEFENDANTS.

Action on a policy of insurance on the brig Hope, from Alexandria to Barbadoes,
and back to the United States. On the outward voyage, the Hope put into
Hampton Roads for a harbour during an approaching storm, and was driven on
shore above high water mark. A survey was held, and she was recommended
to be sold for the benefit of all concerned. The assured abandoned, and there
was no pretence but that the injury which the vessel had sustained justified
the abandonment. The question in the case was, whether, by the acts of the
assured, the abandonment had not been revoked.

There can be no doubt but that a revocation of an abandonment before accepted
by the underwriters may be in   ed from the conduc* of the assured ; if his
acts and interference with the use and management of the subject insured be
such as satisfactorily to show that he intended to act as owner, and not for the
benefit of the underwriters. But this is always a question of intention, to ba
collected from the circumstances of the case, and belongs to the jury as mat-
ter of fact ; and is not to be decided by the court, as matter of law. [143]

In the case of the Chesapeake Insurance company *vs.* Stark, 6 Cranch, 272, this
court lays down the general rule, that if an abandonment be legally made, it
puts the underwriter completely in the place of the assured ; and the agent
of the latter becomes the agent of the former, and that the acts of the agent
interfering with the subject insured will not affect the abandonment. But the
court takes a distinction between the acts of an agent and the acts of the
assured. That in the latter case, any acts of ownership by the owner himself
might be construed into a relinquishment of the abandonment, which had not
been accepted.

But the court in that case did not say, and we think did not mean to be consi-
dered as intimating that every such act of ownership *must* necessarily, and
under all possible circumstances be construed into a relinquishment of an
abandonment. The practical operation of so broad a rule would be extremely
injurious. [144]

ERROR from the circuit court of the county of Alexan-
dria, in the district of Columbia.

This was an action on the case brought by Ashby and
Stribling against the Columbian Insurance Company of
Alexandria, on a policy of insurance on the brig Hope, on a
voyage from Alexandria, to and at Barbadoes and back to
the United States ; the vessel valued at three thousand dol-
lars, and the sum insured being one thousand dollars. The
loss was stated to be, " that while the vessel was proceeding
on her voyage, and before her arrival at Barbadoes, she was,

by·storm and peril of the sea, sunk, and wholly lost to the plaintiffs, and did not arrive at Barbadoes." The declaration also avers, that the plaintiffs did in due time and form abandon the vessel to the defendants.

The facts of the case are fully stated in the opinion of the court; and the only question before the court was, whether on the evidence laid before the jury, it was competent for the jury to infer, and they ought to infer that Stribling, one of the assured, for himself and his partner, Ashby, had revoked the abandonment made, as stated, to the insurance company.

Mr Jones, for the plaintiffs in error, contended; that the conduct of Mr Stribling was a revocation of the abanment. The persons on board a vessel which may be wrecked are the agents of the assured and the owners; but this does not exclude the insurers from interfering, and if they think proper, from taking charge of the property; and if the party insured comes in and resists the authority of the assurers, he resumes the title to the property, and the assurers are discharged. Cited, Chesapeake Insurance Company *vs.* Stark, 6 Cranch, 268.

In this case, the agent of the insurance company was at the place where the vessel was wrecked, and was ready to do every thing for the safety of the property, and to get it off. This was prevented by the sale made by the directions of the assured, and against the wish of their agent.

If the owner or master of a vessel does acts wholly inconsistent with the rights of the assured, it is a waiver of the abandonment. 2 Marsh. on Insurance, 614, and cases there cited.

Mr E. J. Lee and Mr Swann, for the defendants in error; denied that after the abandonment was made, the insurance ·company acted in relâtion to the property assured. The agent of the company left Alexandria before the abandonment was received by the company; and no authority was transmitted to him at Norfolk after the same. All his acts were therefore without warrant from the company.

In his letter offering to advance money to get off the ves-

[Columbian Insurance Company *vs.* Ashby and Stribling.]

sel, the liability of the insurance company for the loss was expressly reserved.  He did not order the sale of the vessel to be stopped for the plaintiffs in error.

This court on examining the evidence will say, it was not such as the jury should have considered sufficient to show that the abandonment was withdrawn or revoked. The whole of the conduct of Mr Stribling was, in the situation in which he stood, perfectly proper; and the evidence of the auctioneer shows that to have been the case, and that after the sale had commenced he did no more than express an opinion.  Cited, Phillips on Ins. 407.  5 Serg. & Rawle, 506.

Mr Jones, in reply, contended; that the sending of the agent of the insurers to Norfolk, was evidence of authority, and that the reservation in the letter addressed by him to the auctioneer, was only to operate if the vessel should be saved, and be put in a situation to proceed on the voyage insured.

Mr Justice Thompson delivered the opinion of the Court.

This case comes up on a writ of error to the circuit court of the district of Columbia for the county of Alexandria.

It is an action upon a policy of insurance bearing date the 28th of May 1825, on the brig Hope, on a voyage from Alexandria to Barbadoes, and back to a port in the United States. The vessel is valued at three thousand dollars, and the sum insured is one thousand dollars.

The loss as alleged in the declaration is, that the vessel, whilst proceeding on her voyage, and before her arrival at Barbadoes, was by storm and peril of the seas sunk and wholly lost to the plaintiffs.  The whole evidence is spread out upon the record; and upon which the defendants' counsel prayed the court to instruct the jury that it was competent for them to infer, and that they *ought to infer* from the evidence, that the plaintiffs had revoked the abandonment which they had made to the defendants; which instruction the court refused to give, and a bill of exceptions was duly taken to such refusal.  And whether the court erred in refusing to give the instruction prayed, is the only question in the case.

From the evidence it appears that captain Brown, the master of the vessel, put into Hampton roads, for the purpose of making a harbour and securing his vessel from an approaching storm, which, from the appearance of the weather, threatened to be very severe. And on the 5th of June, by the violence of the storm, the brig was driven on shore, above high water mark, near Crany Island. On the next day a survey was held upon her, and the surveyors, after examining her situation and the injury she had received, recommended her to be sold for the benefit of all concerned. And on the 14th of June, Stribling, one of the owners, being at Norfolk, sent a letter of abandonment to the defendants, which was received by them on the 17th of June. There was no pretence but that the injury which the vessel had sustained justified the abandonment. But the question was, whether such abandonment had not been revoked; and the circumstances relied upon to show such revocation were, that James Sanderson, the secretary of the Columbian Insurance Company, arrived at Norfolk on the evening of the 16th of June, being before the letter of abandonment was received by the defendants, and on the same evening offered to Stribling, one of the plaintiffs, to supply the money necessary to get the vessel off. And two days afterwards he made the same offer to James D. Thorborn, the agent of the plaintiffs; stating that he had come to Norfolk at the request of the defendants, and to take such measures as he might think advisable for their interest, and to give every aid to the owners of the brig; and he forbid Thorborn and Stribling from proceeding in the sale, which was then about to take place according to an advertisement which had been previously published in the Norfolk papers. But Stribling, on consultation with Thorborn, directed the sale to be continued. The refusal of Stribling to accept the offer of Sanderson to supply the money necessary to get the vessel off, and proceeding in the sale after being forbid by Sanderson, are the acts alleged to have constituted a revocation of the abandonment.

The instruction prayed for to the jury ought not in its full extent to have been given, unless the evidence was such as

in judgment of law amounted to a revocation of the abanment. If the court had only been requested to instruct the jury, that they *might* from the evidence infer a revocation, the prayer would not have been so objectionable. But a positive direction, that they *ought to infer* such revocation, would have been going beyond what could have been required of the court, under the evidence in the cause. There can be no doubt but that the revocation of an abandonment before accepted by the underwriters, may be inferred from the conduct of the assured; if his acts and interference with the use and management of the subject insured be such as satisfactorily to show that he intended to act as owner, and not for the benefit of the underwriters. But this is always a question of intention, to be collected from the circumstances of the case, and belongs to the jury as matter of fact; and is not to be decided by the court as matter of law. We do not however, in the present case, see any evidence which would have fairly warranted the jury in finding that the abandonment had been revoked. The injury was such as to occasion almost an actual total loss of the vessel; and there could have been no possible inducement for the assured to revoke the abandonment. There is no evidence to justify the conclusion that Stribling was acting for his own benefit, and not for that of the underwriters. The assured, by operation of law, became, after the abandonment, the agent of the underwriters, and was bound to use his utmost endeavours to rescue from destruction as much of the property as he could, so as to lighten the burthen which was to fall on the underwriters. The assured had received no information from the underwriters, whether they accepted or refused the abandonment. Nor did Sanderson, who professed to act as their agent, communicate any information to Stribling on that subject; and it would seem from the testimony of Thorborn, that the conduct of Sanderson was calculated to cast some suspicion upon his motives. He says " he then thought, and still thinks, the course pursued by him must have been designed to perplex and embarrass the persons who were engaged in the management of the affairs of the vessel; since his letter was not delivered until the sale had

commenced, and no authority was shown by him from the defendants to make arrangements for getting the vessel off, or to defray the expense that had already been incurred on her account." Although Stribling knew Sanderson, as secretary of the Columbian Insurance Company, he could not thereby know that he was clothed with authority to bind the company by whatever arrangement he should make. His authority as secretary did not clothe him with any such power. It is true Stribling did not demand of him to show his authority from the company, and this might be considered as open to the conclusion that such authority was admitted ; but all this was matter for the consideration of the jury, and the court could not assume that he was or was not authorised to bind the underwriters.

In the case of the Chesapeake Insurance Company *vs.* Stark, 6 Cranch, 272, this court lays down the general rule, that if an abandonment be legally made, it puts the underwriter completely in the place of the assured, and the agent of the latter becomes the agent of the former ; and that the acts of the agent, interfering with the subject insured, will not affect the abandonment. But the court takes a distinction between the acts of an agent, and the acts of the assured ; that in the latter case, any acts of ownership, by the owner himself *might* be construed into a relinquishment of an abandonment, which had not been accepted.

The court in that case did not say, and we think did not mean to be understood as intimating, that every such act of ownership *must* necessarily, and under all possible circumstances, be construed into a relinquishment of an abandonment. The practical operation of so broad a rule would be extremely injurious.

It would deter owners from interfering at all for the preservation of the subject insured, and leave it to perish for fear of prejudicing their rights under the abandonment. All such acts must be judged of from the circumstances of each case. The quo animo is the criterion by which they are to be tested.

If in this case Stribling, the owner, had become the purchaser of the brig, and had got her off and fitted her up, it

would have afforded very strong, if not conclusive evidence of a relinquishment of the abandonment. But such was not the fact; and whatever he did, appears to have been done in good faith, and with a view to the preservation of the property. But this case is very distinguishable from that of the Chesapeake Insurance Company *vs.* Stark. There the underwriters had refused to accept the abandonment, and the court applied the rule to that case. In such a case the assured is at liberty to revoke the abandonment. But here the owner did not know whether the underwriters would refuse or accept the abandonment. No answer had been received to the letter of abandonment, and the assured was left in uncertainty as to his right of revocation. We think, therefore, that there was no act of ownership exercised by Stribling, which the law would pronounce a revocation of the abandonment, or which called upon the court below to instruct the jury that they *ought to infer* a revocation from any such acts.

The other circumstance relied upon is; that Sanderson, who professed to act as the agent of the underwriters, offered to supply the money necessary to get the vessel off, and put her in a situation to pursue the voyage.

What effect this offer would have had upon the right of the assured to abandon, until the experiment to get off the vessel had been tried, provided such offer had been unconditional and made before the abandonment, either by the underwriters themselves, or by an agent fully authorised for that purpose, is a question upon which we give no opinion; the case does not require it. The authorities on this point do not appear to be in perfect harmony. 6 Mass. Rep. 484. 5 Serg. & Rawle, 509. 3 Mason, 27. 2 Term Rep. 407. 2 Wash. C. C. Rep. 347.

The present case however is not accompanied with these circumstances. The abandonment here had actually been made, before the offer to pay the expenses of getting off the vessel; and no answer from the underwriters had been received, nor did Sanderson undertake to decide that question for them. Although he professed to act as the agent of the underwriters, he showed no authority for that purpose, and

one of the witnesses swears, that he thought the course pursued by him was designed to perplex the proceedings in relation to the vessel; and his letter to Thorburn, making the offer of the money, has this condition: "I reserve to the company all right of defence, in case they should not be liable for any part of the expenses attending the business.

Under such circumstances, it is very clear the assured could not be required to waive an abandonment, which from any thing that he knew might, at that time, have been accepted; in a case too where there was a clear and undeniable right to abandon.

The court below did not therefore err in refusing to instruct the jury, that they ought to infer from the evidence that the abandonment had been revoked. The judgment must be affirmed.


This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.