Mr. Justice Clayton
delivered the opinion of the court.
This was an action upon a policy of insurance, instituted to recover damages for a loss sustained on three hundred and forty-one bales of cotton, shipped upon the steamboat Fort Adams. The policy was in the usual form, and extended to all kinds of *373 goods and merchandise, laden or to be laden on board any good steamboats, the adventure to begin immediately upon the loading thereof, and to continue until such goods and merchandise shall be safely landed at New Orleans; the insurance to extend from Grand Gulf, in Mississippi, to New Orleans, with privilege to touch at any port or place usual on said voyage. The insurers agreed to bear the adventures and perils of the river, of fire, and all other perils, losses, and misfortunes that had, or should come to the hurt, detrimentor damage of said goods and merchandise, or any part thereof. And in case of any loss, or misfortune, it should be lawful to and for the assured, their factors, servants, and assigns, to labor for the defence, safeguard and recovery of the goods, and the assured engaged to do so, at the expense of the insurers, without prejudice to the insurance.
The steamer Fort Adams, in the month of December, 1836, being partly loaded with cotton, left the mouth of Cole’s Creek, proceeded to Natchez, there took in tow the brig Auguste, went on to Fort Adams, and remained there'about twenty-four hours, during which, more cotton was received both on the brig and the boat. She then proceeded on her way to New Orleans, but met with a heavy storm, which compelled her to lie by one night. The next morning, the storm having somewhat abated, she again got under way ; but the storm increased in violence, the brig and boat both pitched and labored excessively, when it was discovered that the boat was leaking, and the. hold rapidly filling with water. In this emergency they prepared to make for the shore, directing the crew of the brig to prepare to cast off. This, however, to use the language of the protest, “ was not done until they came very near the shore, when the brig unlashed and came to anchor, and the boat shooting ahead took the ground,” and afterwards sunk.
A correspondence took place between the insured and the insurers, relative to the adjustment of the loss, but failing to come to any agreement, this suit was brought. The cause has already been twice to this court, and was each time reversed and remanded. On the first occasion, the rule by which the *374 damages should be estimated constituted the point of inquiry; on the second, the criterion by which the damage under that rule was to be ascertained, was the question to be determined. 4 How. 63. 5 How. 744. '
Upon neither of these occasions were the points discussed, which are now submitted for consideration. Then it seems to have been taken for granted, that the defendants were to some extent liable; now, however, it is insisted that they are not at all responsible.
Questions of insurance are with us of rare occurrence, and the principles which govern them are not familiar to those whose minds are given to other branches of the law. Hence it is probable, that the views of counsel have become more extended, as they have proceeded in the investigation, and they have ascertained the application of principles, which in the beginning they did not perceive. And hence the case assumes, in their view, an entirely new aspect.
It is insisted by tire counsel of the defendants in error, that this view of the case is excluded, by the correspondence between the parties, before the commencement of the suit, that the plaintiffs in error then admitted their liability, and they should be holden bound by that admission.
The correspondence contains various offers of adjustment, propositions were submitted by the one to the other, but no one which met the concurrence of both parties. In the letter of the 28th March, 1837, from the plaintiffs in error, it is stated “ that the company are tp indemnify Stanton, Buckner & Co. all damages sustained by a peril of the river,” when proof of a specified description is afforded. .In the whole correspondence the idea is held out, that they are willing to settle upon certain terms, and certain principles, which were rejected by the defendants in error. Upon the failure of the negotiations for an amicable adjustment, the parties, in our opinion, were remitted to their original legal rights, and we are bound to make our decision upou that basis.
The defence now set up is that the taking the brig in tow, was a deviation from the terms of the contract of insurance, *375 which so varied and increased the hazard as to discharge the underwriters.
Policies of insurance create reciprocal rights and obligations, they form a class of contracts in which the utmost good faith, uberrima fides, is requisite on both sides. Each party is bound to fulfil the warranties, either expressly entered into, or implied by the law. On the part of the assured, certain warranties are implied, which- enter into and form part of the contract, and by which he is as much bound as if they were expressed. Of these are seaworthiness, proper documentation, not to deviate, and that the goods shall be properly stowed. 1 Kinne, 505, 536. Sherman’s Digest of Marine Insurance, 193. 1 Phillips on Ins. 306. Ibid. 21.
The warranty as to proper documentation does not extend to the owner of goods, but this seems to be the only exception in his favor. 1 Kinne, 508. On the subject of seaworthiness, some remarks may be made in a subsequent part of this opinion; at present we are dealing only with the question of deviation. Phillips, in the passage just referred to, says, “the doctrine of deviation is founded on an implied understanding and agreement between the parties, arising on the fact of making the assurance, that the adventure is to be pursued in the usual manner, or that the risk shall be such as vessels are usually subject to, and not voluntarily varied by the assured or those who represent him.” And the doctrine applies as well to the navigation of rivers, as of the ocean. 1 Phillips, 571. Gazzam v. Ohio Ins. Co., 1 Wright, 262.
Any voluntary deviation is a change of the risk, it forms a departure from the contract, and an attempt to substitute another. It is not necessary that the risk should thereby be increased, it is sufficient if it be changed. Lord Mansfield laid down the rule, “ that the true objection to a deviation is not the increase of the risk; it is, that the party contracting has voluntarily submitted another voyage, for that which has been insured.” Lavabre v. Wilson, 1 Doug. 291. In 7 Cranch, 30, the supreme court of the United States says, “that the discharge of the underwriters from their liability in such cases, *376 depends not upon any supposed increase of risk, but wholly on the departure of the insured, from the contract of insurance.” The effect of a deviation is the discharge of the underwriters. But by his breach of this implied warranty against deviation, the owner of the ship becomes liable to the owner of the goods for their loss. 1 Phillips, 485. 12 Conn. Rep. 410.
It thus becomes necessary to decide whether taking the brig in tow amounted to a deviation, there being nothing in the policy which expressly authorized it. In our opinion it did. Mere delay — taking on board more cargo than is permitted by the policy — shortening sail to keep company with a prize, are all instances which have been bolden to amount to a deviation. 7 Cranch, 26, 487. 1 Kinne, 539. 1 Phillips, 546. Any act which changes the risk, produces that result. “ The shortness of the time or of the distance of the deviation, makes no difference as to its effect upon the contract; if voluntary and without necessity, it is the substitution of another risk, and determines the contract.” 3 Kent, 313. 9 Mass. 449. This point, in a nearly parallel case, was recently decided in the supreme court of Tennessee. It was there holden, that “ to lash a flat-boat descending the Mississippi, laden with produce, to a steamboat, to be towed, is a.departure from, and a violation of, the contract of insurance.” Stewart v. Tennessee Marine and Fire Insurance Co., 1 Humph. 242. The only difference between that case and this is, that there the boat'insured, was attached toa steamboat, here the steamboat insured took- a brig in tow. In principle there is no distinction.
But the case of Herman, Briggs & Co. v. The Western Marine and Fire Insurance Co., 15 Curry’s La. Rep. 516, is still more directly in point. That was an action upon a policy of insurance, upon this very boat, the Fort Adams, instituted to recover for the loss of the boat, at the same time at which this suit is brought, to recover for the goods. Of course, the prominent facts are the same. That court held.the underwriters to bé discharged, upon the ground that there had been a deviation.
It was attempted, in argument, to weaken the authority *377 of this case, by showing that it was founded upon the peculiar laws, and peculiar views of policy of that state. In this we cannot concur. It is true, that the civil code of Louisiana is cited, in support of a single principle in the case, in reference to usage ; but as to the question of deviation, it is made to rest upon general principles, recognized in the common law authorities, and regarded as of general, if not universal, application. Moreover, a' late learned and highly valuable writer, who has indulged very liberally in criticism, of the cases which, in his view, have departed from the true principles of the law of insurance, has cited this case, with seeming approbation, and without calling in question its authority, or its conformity to the rules of the common law. 1 Phillips on Insurance, 571. We do not, therefore, feel at liberty to disregard it, and are inclined to give it the weight to which we think it justly entitled.
It is not attempted to elude the force of this decision, and, consequently, of the general doctrine which it affirms, by drawing a distinction between an insurance upon a vessel, and an insurance upon the cargo. In the former instance, it is said, the master and mariners are the agents of the assured, the owners of the vessel; but in the latter, they are not the agents of the owners of the goods. No authority was.cited in support of the position, except Abbot on Shipping, p. 90, et passim. In that author it is very broadly laid down, that the master and crew are the agents or servants of the owners of the vessel; and this is no doubt true. But it by no means follows, that they are not likewise, the agents of the assured.
The objection is novel, and we have been at much pains to ascertain to what extent it is well founded. Almost numberless actions have been brought upon policies on goods, in which deviation has been set up as a defence, yet we have seen no case, in which there was an attempt to defeat the defence, upon this ground. See Columbia Insurance Company v. Catlett, 12 Whea. 383. Brown v. Girard, 4 Yeates, 115. 7 Term Rep. 501. 1 Maul. & Sel. 46. This list might be greatly extended, and we have examined many other cases on the point of deviation, in *378 none of which has the distinction been taken. This, though a strong, is not a conclusive argument against it.
In Lodowicks v. Ohio Insurance Company, 5 Ham. 274, a cas.e which arose under an insurance of com upon a flat-boat, the rule as to the agency is very clearly stated. It is said, that the owner ,is the agent of the shipper, for transporting the goods, and employs, in the management of the business, other agents, the master and mariners, for whose conduct, in that employment, he is accountable to the shipper. Marsh. Ins. 225. “ The captain and mariners, navigating vessels in which insured property is laden, are, in legal contemplation, the agents of the; assured, in reference to the goods, insured.” The rule is laid down by Phillips, “ that after abandonment, the assured becomes the agent of the underwriters;” or, as it is stated in another passage, “ the assured, by the abandonment, becomes the immediate agent of the insurers, and the captain the sub-agent of the assured.” Yol! 2, p. 439, 449. The same rule is laid down in 7 Johns. 514. In Scheifflin v. New York Insurance Company, 9 Johns. 21, the court says, “ The master is the agent of the assured, until an actual and valid* abandonment, and they ought to bear the consequence of his neglect.” The same, principle is re-asserted, in Grim v. Phoenix Insurance Company, 13 Johns. 451. The supreme court of the United States, in substance, says, “ By abandonment, the underwriters aje substituted for the assured, and the master, although the agent of the owners until the loss occurs, becomes, by abandonment, the agent of the underwriters. The interest in the salvage is transferred to them, and the agency is transferred with the subject; and the agent becomes responsible to the underwriters, for the faithful discharge of his trust. No action could b.e. sustained, against him by the assured, for the proceeds, or a,ny misconduct in the management thereof.” Columbian Insurance Company v. Ashby, et al., 4 Peters, 139. 2 Phill. 442. These, except the last, were all cases of insurance upon the cargo.
The principle upon which they rest is very obvious. The master, and mariners are intrusted with the goods, and are the *379 agents of the owners. The assured are the owners until a valid abandonment, the insurers become, so after that event.
The special clause in the policy, “ that in case of loss, the assured and their servants shall labor for the defenfce, safeguard and recovery of the goods,” is introduced expressly with a view to this rule. Without this clause-, the duties of the assured would cease with the abandonment; with it his efforts are still to be exerted, but those exertions are not to be construed to his prejudice. 4 Peters, 139. It is the practice in some policies, where it is desired to secure the distinction, the existence of which is contended for in this case, to insert a clause by which the conduct of the agents, in reference to the cargo, is insured against, but not in reference to the ship. 1 Phil. 578.
It would seem to be unnecessary to pursue this inquiry farther. But there is a class of cases which seems to extend the limits of the liability of insurers, for the acts of masters and mariners. They go to fix this principle, that when a loss occurs, the proximate cause of which is a peril insured against, the insurers will be liable, though the remote cause be the act of the agent of the assured, or arise from his negligence and misconduct. In Bishop v. Pentland, 7 B. & C. 219, the rule is thus stated, “ the underwriters are liable for a loss, the proximate cause of which is one of the enumerated risks, though the remote cause may be traced to the master and mariners.” See 2 Barn. & Ald. 73. 5 Barn. & Ald. 171. Patapsco Insurance Company v. Coulton, 3 Peters, 222. Waters v. Merchants Louisville Insurance Company, 11 Peters, 213. But this doctrine has never been extended to a case of voluntary deviation, and seems to be in its nature inapplicable to cases of that kind.
Phillips concludes his remarks on this class of cases, in these words. “But the application of these principles to particular cases, does not seem to have been very definitely settled. It is plain that the master is the agent of the owners, both of the ship and the cargo, to more purposes than the mariners. ■ Chief Justice Gibbs has also glanced at a distinction in this respect, between the owners of the ship and the owners of the cargo. Speaking of a loss by the misconduct of the master and mari *380 ners, he says, “ It is extremely hard that the owner of goods should be responsible for a loss, occasioned by an act in which he did not concur, and by which he was alone the sufferer.” Soares v. Thornton, 1 Moore, 385. Reported also in 7 Taunt. 627. Sir William Scott also notices the same distinction. The Adonis, 5 Rob. 286. But upon what principles, and to what extent, such a distinction is to be made, has not as yet been definitely determined. The owners of the ship are the agents of the shipper, for transporting the goods, for which purpose they employ other agents, namely, the masters and mariners, for whose conduct in this employment, they are no doubt answerable, in a greater or less degree, to the shipper. And it seems to be more generally implied, that, in respect to the acts of the agents, for which the owners of the ship are answerable to the shippers, the insurers of the goods are not answerable.” Cleveland v. Union Insurance Company, 8 Mass. 321. 1 Phil, on Ins. 225. The concluding paragraph excludes the idea that the principle can extend to a case of deviation, when it is voluntary. There not only the remote, but the sole cause, is the act of the master and mariners. It is also clear that for such an act of deviation, the owner of the ship would be liable to the owner of the goods. Norton v. Hobard, 8 Pick. 159. 1 Phil. 485. According to many of the cases, this last principle may be propounded in more comprehensive terms. That the insurer is only liable for extraordinary perils, unless by express stipulation, and not for such as proceed from the negligence, un,skil-fulness, or misconduct of the master and crew. 8 Mass. 322. 5 Ham. Ohio Rep. 276. 1 Phil. 625. For these last the shipowner is responsible, as a carrier, and the liability of the insurer does not commence, until that of the carrier ceases. But this I regard as the debatable land, and in cases of this description the doctrine of losses, from proximate or from remote causes, seems to vibrate and hang in suspense.
The point of voluntary deviation, however, is exempt from any such perplexing refinements and distinctions. 1 Humph. Ten. Rep. 248.
In regard to the remarks stated in the above extract, to have *381 fallen from Chief Justice Gibbs, upon the distinction under consideration, there are, it seems, two reports of the case. The one in 7 Taunt. 627, is the only one I have been able to find. It was an action on a policy of insurance, covering barratry expressly, and the declaration averred a loss by barratry; the action was by the owner of the goods. The vessel was under a charter of affreightment, and the party wh.o chartered her was on board; the general owner was likewise on board. On one occasion the owner took the command of the vessel, and the captain assenting, wilfully ran her ashore, and the goods were lost to the plaintiffs. The material question was, whether this was a loss by barratry. The chief justice says, “Barratry is an act of fraud, not directed against the owner of the goods, which are lost, but a fraud against the owner of the ship; and however innocent may be the owner of the goods, who seeks to recover against the underwriter, yet if the owner of the ship concur in the act which caused the loss, it takes from it the character of barratry; for the very definition of barratry is, a fraud by the master and mariners against the owner of the ship.’' But it was holden that the freighter was for the time the owner of the vessel, and that as he did not consent to the act of fraud, or concur in it, the act of the orignal owner and master together, was a complete act of barratry. It fell,’therefore, within the peril insured against. In conclusion, the judge remarked, “we cannot regret this result, for it is a very hard thing, when a person has insured his goods, to find himself exposed to a loss, to which he supposed his indemnity would extend, but in which he is frustrated.” The whole case clearly shows, that if it had been holden not to be barratry, the plaintiff would not have been permitted to recover. It therefore attempts as there reported, to introduce no distinction in this particular, but it lets the law remain undisturbed, as previously settled.
But if intended by the learned judge to introduce a distinction, it goes no farther than the case of barratry. That according to the late English cases, and to most of the American cases, is an offence wjaich can only be committed against the owners of the *382 vessel, though the New York cases extend it likewise to the owner of the cargo. Cook v. Cour. Insurance Company, 11 Johns. 40. 1 Phill. on Ins. 603, et seq. 7 Taunt. 627. 11 Peters, 220. Barratry is not covered by the ordinary provisions of a policy; it requires an express stipulation to comprehend it, and without such stipulation the underwriters are not hound. •13 Peters, 421. 3 Kent, 304. 1 Kinne, 542. In such case where the owners of the vessel lose their claim to indemnity, under the policy, the hardship of making the owners of the goods likewise lose their insurance, does appear to plead strongly for a relaxation of the rule in their favor. But under even those circumstances, it seems to us belter to require the introduction of an express clause into the policy of insurance against barratry, or of protection of the owners of the goods, when no room would be left for doubt, and the insurer, by an increase of premium, would be compensated for the increase of risk. 1 Phil. 618. But we have nothing farther to do with this point, than to distinguish it from the case before us.
After this examination of the general doctrines involved in the case, it is not necessary to enter upon a close consideration of the charges given by the court below. It will be easy to perceive in what they differ from the principles here laid down, and upon any future trial, they must be made to conform to them.
The advertisement referred to in argument, that the company would insure goods upon certain enumerated boats, could at most only amount to a waiver of the implied warranty of seaworthiness. We do not see, therefore, that it can have any influence in the cause.
In regard to the question of usage, there is no proof of any usage on this subject, at Natchez, where the defendants reside, and where the contract was made. • The usage of the insurance offices, at New Orleans, could not affect them, neither could the usage of towing boats upon the river by steamboats, unless it was shown to be so general, and so well known, that it was fair to presume the parties contracted with reference to it. 2 Wash. C. C’. Rep. 257. 1 Gal. 444. Law Reporter, Yol. 6, No. 3, p. 117. 1 Phil, on Ins. 54.
The judgment is reversed, and a new trial awarded.