Dennis John LEWIS, a/k/a Richard Kennedy, Appellant,

v.

GREYHOUND LINES–EAST et al.

No. 76–1583.

United States Court of Appeals, District of Columbia Circuit.

Submitted without argument 22 April 1977.

Decided 12 May 1977.

---

**1054**

Stephen Daniel Keeffe, and Gregory M. Murad, Washington, D. C., were on the brief for appellant.

Bernard N. Katz, Philadelphia, Pa., was on the brief for appellee, Amalgamated Transit Union. David Bare also entered an appearance for appellee, Amalgamated Transit Union.

Edward R. Levin and David W. Rutstein, Washington, D. C., were on the brief for appellee, Greyhound Lines-East.

Before MacKINNON, ROBB and WIL-KEY, Circuit Judges.

Opinion Per Curiam.

Dissenting Opinion filed by Circuit Judge MacKINNON.

**PER CURIAM:**

In this suit under Section 301 of the Labor Management Relations Act,[1] appellant contended that he was wrongfully discharged by Greyhound Lines-East (Employer) and that the Amalgamated Transit Union (Union) breached its duty of fair representation in the processing of his grievance. Appellant sought, among other things, to overturn the award in arbitration sustaining his discharge. This appeal is taken from the order of the District Court, granting motions to dismiss by the Employer and the Union. We affirm, largely on the basis of the opinion of the District Court (Pratt, J.).[2] Through a brief highlight of the basic issues, we would like to exemplify various points of agreement with the District Court.

The basic reason for appellant's discharge is that he abandoned his job. In brief, he refused to return to his job after being told that he must attend a disciplinary meeting with the Employer without a Union representative. After a time he located the Union President, who also told him he was not entitled to a Union representative at all possible disciplinary meetings (although the Union President did accompany appellant to all such meetings). After a discharge ensued, appellant and the Union instituted a grievance and prosecuted it through arbitration. As noted, the arbiter sustained the discharge.

We emphasize at the outset that this appeal does not call upon us to review the merits of the discharge. The collective bargaining agreement provided for arbitration as the exclusive grievance mechanism; where arbitration is so specified in the collective bargaining agreement, courts must respect this and accept the award as final and binding in the absence of procedural flaws indicating the possibility of a miscarriage of justice. An award can be set aside if the union breaches its duty of fair repre-

1. 29 U.S.C. § 185.

2. *Lewis v. # 1 Greyhound Lines—East*, 411 F.Supp. 368 (D.C.D.C.1976).

sentation in connection with the arbitration proceedings, *Hines v. Anchor Motor Freight*,[3] but, as the District Court properly found here, *see infra,* no breach of duty occurred. Given the absence of any procedural flaws in an arbitral award agreed by Union and Employer to be exclusive and final, it is hardly the role of an appellate court to go behind the arbiter's findings and retry this discharge complaint on the facts at this level. We thus affirm the enforcement of the finality provision as respects the arbitration here.[4]

As evidence that the Union breached its duty of fair representation, the appellant relied heavily upon the fact that the President of the Union told him that he was not entitled to a Union representative at the first possible disciplinary meeting. However, the statement of the Union President was based upon "an interpretations manual of the collective bargaining agreement," thus detracting, in the judgment of the District Court, from the allegations of bad faith that appellant must set out to show the breach of the Union's duty. The District Court also noted that the events in the case occurred in 1973, prior to the decision in 1975, *NLRB v. Weingarten, Inc.*,[5] holding lack of union representation at disciplinary meetings to be an unfair labor practice.

Appellant also denominated, as further evidence of bad faith, the Union's failure to file an action with the NLRB *after* the arbitration. (The Union pressed appellant's discharge to arbitration, where it provided counsel through two days of proceedings). The District Court very properly responded that a union does not have to advance to the NLRB every grievance of its members. It possesses discretion to pursue only those grievances it fairly considers to be meritorious. In addition, the District Court noted, appellant cannot complain of the running of the statute of limitations on the NLRB appeal since the Union disclosed its intention to challenge only the wrongful discharge, and not the representation issue.

In sum, the District Court correctly decided not to set aside the arbitration award. Since the representation of the Union did not undermine the integrity of the arbitration proceedings, the arbitration award should be enforced as final and binding.

The order of the District Court, granting the motions to dismiss, is hereby

*Affirmed.*

MacKINNON, Circuit Judge, dissenting:

Lewis complains that he was unlawfully discharged in violation of the union-company contract, a claim cognizable under section 301 of the Taft-Hartley Act.

On August 3, 1973 (a Friday), at about 7:50 A.M., ten minutes before quitting time,

---

3. 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

4. Even were we to reach the merits for any *reason,* it does not appear to us that the arbiter was arbitrary in sustaining the discharge. The arbiter essentially found that in his failure to report to work after being asked to attend a disciplinary meeting the appellant failed "to recognize the right of the Employer to reasonably control the activities of its employees. . . ." *Opinion and Award*; Appendix at 31. In other words, it is not the legitimate prerogative of the employee to disobey a supervisory order, even if he believes that his contractual rights are violated. Lewis should have gone to the supervisor's office immediately. If he deemed that action improper, he should have pursued his remedy through the established grievance procedure. Since he refused to report to work or to the meeting for a four-day period, during only one of which days,

7 August 1973, does it appear that he could not do so because a meeting with the Employer could not be arranged, Lewis' absence from work was indeed a voluntary absence and could provide basis for a lawful discharge. In addition, the arbiter found that the disciplinary meeting, which the Union President attended, turned out to be "incomplete and ineffective" due to the appellant's "attitude," *e. g.,* his unfounded charges of lying. According to the arbiter, appellant failed "to heed the advice of his Union representative whose intercession he had requested, when the latter attempted to handle the dispute intelligently and correctly." *Ibid.*

5. 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171. Moreover, we might point out, the Board of Arbitration considered *Weingarten* and found it inapplicable, *i. e.,* appellant was provided union representation. *Opinion and Award*; App. at 31.

Lewis was summoned to his supervisor's office at the Greyhound Bus Company for a disciplinary hearing. He was told that the supervisor wanted to "discuss the quality of his work." He replied that he would not attend such meeting without the presence of a union representative. Prior to this time Lewis had been told that he was entitled to be represented by union representatives at such hearings. The supervisor, however, insisted on his immediate attendance even without a union representative. The supervisor did not inform Lewis that he was *not* entitled to the presence of a union representative.

Lewis punched out at 8:01 A.M. and departed for his other job which began at 9 A.M. with another company. Later that morning while Lewis was at his other work he received a phone call from Mr. Brown, the Regional Manager for Greyhound, who told Lewis "unless . . . he [reported] to my office at once without a union representative . . . [he] would not be allowed to return to work." *See* finding of arbitrator, App. 28. The arbitrator finds that these words, "at once" or "immediately" as used by Brown in his phone call were not necessarily intended to mean that Lewis had to leave his daytime employment and return to the terminal because it was apparently coupled with a statement that *Lewis would not be permitted to work until he had first met with Brown and that it would be necessary to make an appointment ahead of time to do so.* The arbitrator found that it could not be concluded that "it was then the intention of the Employer to do more than reassert its position that a meeting must take place at a mutually convenient time in accordance with accepted practice." App. 29.

Over the weekend of August 4th (a Saturday) and 5th and also on August 6th, Lewis attempted to communicate with Mr. Butler, his union president, but was unable to find him at his office. On August 6th (Monday) he finally reached Mr. Butler on the telephone and on Tuesday, the 7th, he met with Mr. Butler in the morning at the Greyhound terminal and at that time an attempt was made to meet with Mr. Brown,

the Greyhound representative. Mr. Brown, however, was "busy and was unable to see Mr. [Lewis] . . . at that time, but an arrangement was made for a meeting to take place on the following day, August 8th." App. 29.

The meeting finally took place on August 8th. Lewis denied the charges in strong language and *at the conclusion of the meeting* the company's customary discharge form (Form 6) was delivered by Mr. Brown to Mr. Lewis. The document was signed by Mr. Brown. *It was dated August 7th, the day before the meeting.* App. 30. Thereafter Lewis contested his discharge by filing a grievance.

This grievance was heard by three arbitrators. The arbitration award states that Lewis "abandoned his job because of his failure to communicate with Mr. Brown from August 3 through August 7" and *apparently* upheld the discharge. App. 31. The opinion admitted, however, that the basis for the action was *incomplete* because Lewis did make efforts to support his position to the extent that he had attempted to communicate with Mr. Butler.

The arbitration opinion and award recites that the arbitrators met on June 12, 1974 and February 11, 1975 but the copy thereof, that is contained in the appendix (App. 27–32), is signed *only by one arbitrator*, "Knowlton" (App. 32). The lines for the signatures of the other two arbitrators state "Concurring/Dissenting" (App. 32). To what extent the other arbitrators concurred or dissented is nowhere indicated. The arbitrator's opinion and award also contains the following disclaimer:

> The following opinion is the sole responsibility of the undersigned, Knowlton. (App. 27)

The upshot was that Lewis was fired allegedly for *abandoning* his job after he had been ordered by his supervisor not to return to work until he had first met with Mr. Brown. App. 29. Following such orders from Brown he did not report for work because he was attempting to find the union officer to represent him in his hearing

before Brown and some of the delay was caused by Brown's unavailability. The intervention of the weekend in August (the 4th and 5th) also made it difficult to reach his union representative. Lewis was eventually advised that under some *recent modification* of the union's agreement with Greyhound, he was not entitled to a union representative at the first such meeting. When he learned this, Lewis immediately appeared before Brown. He did, however, have a union representative.

At the hearing he was discharged *nunc pro tunc* for *abandoning his job* during the 4-day period, August 3 to August 7; that the company had told him *not* to report for work unless he had reported for the disciplinary hearing. In view of the fact that the employee had followed his superior's orders in not reporting for work, I find it impossible to support a finding that he "abandoned" his job while he was seeking his union representative to help him preserve his job. Abandonment involves an intentional act and his compliance with Brown's order is completely inconsistent with any claim that he acted intentionally in absenting himself from work. He was industriously working at *two* jobs—hardly the sort of person that would wilfully refuse to work or intentionally "abandon" one job. Abandonment always involves a question of intention, *Columbian Insurance Company v. Ashby*, 29 U.S. (4 Pet.) 139, 143, 7 L.Ed. 809 (1830) and as Judge Johnsen stated in *Equitable Life Assurance Society v. Mercantile-Commerce Bank & Trust Co.*, 155 F.2d 776, 779–780 (8th Cir. 1946), "abandonment 'is a fact made up of an intention to abandon, and the external act by which the intention is carried into effect.'" (Citing cases.) These two elements must conjoin and operate together or there is no abandonment. *Helvering v. Jones*, 120 F.2d 828, 830 (8th Cir. 1941). "Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed." *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31, 21 S.Ct. 7, 12, 45 L.Ed. 60 (1900). The cases are myriad that hold both elements must

coalesce before abandonment will be found to exist. 1 *Words and Phrases* 101–106 (1964). All the evidence in this record belies that Lewis had the requisite intention to abandon his job. I would thus find on the admitted facts of this record that Lewis did not "abandon" his job during the four days he was attempting to find a representative of the union to appear with him at the company-requested disciplinary hearing in his effort to help him hold his job—at the same time complying with the supervisor's order to not report for work until the disciplinary hearing had been held.

Also, it does not appear from the document in the appendix (App. 27–32) that the arbitration award had been sufficiently proved. The collective bargaining agreement provides "in discharge cases, the third arbitrator shall be instructed to issue his decision as promptly as possible . . . ." App. 25. If the arbitration award filed by "Knowlton" was signed by him as the third arbitrator, that still does not explain the absence of the signature of the other two arbitrators nor the extent to which they "concurred" or "dissented" in the opinion and award.

To summarize, it appears that Lewis was fired for "abandoning" his job when he was in reality complying with his supervisor's order not to return to work until he had reported for his disciplinary hearing. This hearing was delayed while Lewis was seeking his union representative to appear with him, only to learn when he found him that he was not "entitled" to such representation because of some modification of the agreement between the union and the company which had not been communicated to Lewis either before the dispute arose or at any time before August 8th when he did appear. The company through Butler was at fault in not informing Lewis that he was not entitled to union representation when he first stated he insisted thereon. And more so, the union was also substantially at fault for the delay in Lewis appearing for the hearing. It breached its duty of fair representation to Lewis by not informing Lewis and its other Greyhound members of the

substantive change which denied them union representation at initial company disciplinary conferences. A union owes an obligation to its members, if it is to fairly represent them, to inform them of material changes in the collective bargaining agreements with employers and particularly of those changes that directly affect the rights of employees in disciplinary and grievance proceedings. This delinquency on the part of the union tainted the arbitration proceeding because the union had an obvious conflict of interest in not stressing its *own delinquency* as the major cause of Lewis not immediately attending the hearing. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). A more vigorous advocate, untainted with being the principal cause of the reason for the employee's discharge, might have prevailed before the arbitrators.

The fact that the union told Lewis it did not plan to raise the fair representation issue in any proceedings before the Labor Board (Maj. op. p. 1054), is further indication of its breach of its duty of fair representation—it could hardly be expected to raise its own failure to fairly represent Lewis as a reason for setting aside the arbitrators' award and upsetting the validity of the discharge—caused as it was largely by its own neglect.

It is true that a union possesses wide discretion to bring a member's complaint before the Board, but the exercise of that discretion is not beyond review where the interests of a union and its member are in conflict. The union was content to rest with an arbitrator's award that appears may be facially invalid. It was signed by only one arbitrator, and clearly stated that it was "the sole responsibility" of that one arbitrator (J.A. 27). This court can only rule on the record before it, and on that record, there is no explanation for the facial flaw in the arbitration opinion.

An error of this type would, at the least, constitute a "serious procedural irregularity," *International Harvester Co.*, 138 NLRB 923, 927 (1962), *enforced sub nom., Ramsey v. NLRB*, 327 F.2d 784 (7th Cir.), *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964), which, under NLRB practice, would suffice to oust any deference to the arbitration award. *See also Spielburg Manufacturing Co.*, 112 NLRB 1080, 1082 (1955). Hence, the union could have been fairly sure of a *de novo* hearing had it taken Lewis' complaint to the Board.

Failure to object to so obvious a shortcoming could raise an inference of a breach of the union's duty of fair representation. The inducement for the union in this case not to object to the arbitration opinion might well have been that (going beyond the issue before him) the arbitrator gratuitously pointed out that "[t]he failure of [the grievance] procedure to operate effectively was in no way due to any lack of representation by the Union . . . ." (J.A. 31). But, obviously, it was.

In my view we should reverse the District Court's decision and remand the case to determine the validity of the arbitration opinion and award and to determine the views of the other two arbitrators. This court cannot decide (at least should not decide) cases on such a sketchy record. If the arbitration award was, as is presently indicated on this record, the opinion of only one arbitrator when the contract called for three, no deference should have been accorded it by the District Court. An arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

I would also order that a hearing be held to determine the extent to which the union breached its duty of fair representation by failing to inform Lewis in advance of his disciplinary problem that he was not entitled to union representation at a first meeting with the company, and also into the responsibility of the company for Lewis' ensuing absence from work which resulted from its supervisor not informing Lewis,

when he stated he desired union representation, that he was not entitled to such representation at that stage of the matter.

For the above reasons I respectfully dissent.