**Earnest Earl WYATT, Plaintiff,**

v.

**INTERSTATE & OCEAN TRANSPORT COMPANY (formerly Interstate Oil Transport Co.), and Inland Boatmen's Union of the Seafarer's International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, A.F. L.–C.I.O., Defendants.**

**Civ. A. No. 77–462–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 4, 1978.

---

Wayne Lustig of Campbell, Lustig & Hancock, Norfolk, Va., for plaintiff.

William B. Eley of Eley, Rutherford & Leafe, Norfolk, Va., for Interstate & Ocean.

C. Arthur Rutter, Jr., Breit, Rutter & Montagna, Norfolk, Va., for Inland Boatmen's Union.

## OPINION AND ORDER

CLARKE, District Judge.

This case comes before the Court on the motion of defendant, Inland Boatmen's Union of the Seafarer's International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, A.F.L.–C.I.O. (hereinafter Union) for judgment notwithstanding the verdict or alternatively, for a new trial. Rule 50(b), Fed.R.Civ.P. Plaintiff, Earnest Earl Wyatt's action, brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, sought recovery against his employer, Interstate & Ocean Transport Company (hereinafter Interstate) for wrongful discharge and his Union for failure to fairly represent him. During the trial, which took place June 20 through 22, 1978, the cross-claims asserted by defendants against each other were voluntarily dismissed. Interstate's counterclaim against plaintiff and plaintiff's claim against Interstate were voluntarily dismissed. The trial proceeded with the Union as the sole defendant and the jury found for the plaintiff in the amount of $50,000.

### Background Facts

Plaintiff injured his back on November 2, 1973, aboard the tug, CRUSADER, while employed as a deckhand by defendant Interstate. Plaintiff was operated on for a ruptured lumbar disc on February 26, 1974, and after convalescence returned to work as a deckhand in October 1974. On March 10, 1975, while still employed by Interstate as a

deckhand, plaintiff filed suit against his employer in this Court (Civil Action No. 76–23–NN), seeking $150,000 in compensation for personal injuries stemming from the November 1973 accident. In late December 1976, plaintiff settled his personal injury action with Interstate. On January 4, 1977, Interstate fired the plaintiff, who, on January 5, 1977, notified defendant Union of his discharge. The Union informed Interstate of the grievance and on January 11, 1977, John Fay, a representative of the Union, met with Interstate pursuant to Article II of the collective bargaining agreement between the Union and Interstate.[1] After meeting with Interstate, John Fay concluded that the discharge was based on good cause and decided not to pursue the grievance. In response to plaintiff's demands that the Union assert his grievance, the Union informed plaintiff that it had decided his complaint was without merit. Plaintiff commenced this action on July 12, 1977, and on August 23, 1977, the Union demanded arbitration of the grievance. Pursuant to an earlier order of the Court, the arbitration was stayed pending the outcome of this action.

### Plaintiff's Burden

■ At trial the Court instructed the jury:

> That the Union has the duty to fairly represent its members in grievance procedures. The Court tells you further that the standard of that duty is that the Union not act arbitrarily, dishonestly, discriminatorily or in bad faith. The plaintiff contends that the defendant Union in

failing to pursue his grievance further, violated this standard. The defendant Union contends that it did not violate this standard. The burden is on the plaintiff to prove by a preponderance of the evidence before he can recover that the defendant did violate the foregoing standard.

The Court refused to charge the jury that:

> In order for the plaintiff to recover against the Union, the plaintiff must establish by a preponderance of the evidence first that the Union breached its duty of fair representation and second, that the plaintiff was wrongfully discharged by Interstate. If the plaintiff fails to prove either of these, then the verdict must be for the defendant Union.

Defendant has argued that failure to give its proffered instruction on the dual element of an unfair representation cause of action was error. However, even assuming for the purposes of defendant's motion for judgment notwithstanding the verdict, that the single element jury instructions given were correct, the Court finds the plaintiff has totally failed under the single element theory of the law to prove a prima facie case.

> A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

> .    .    .    .    .

> . . . a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.

---

1. Article II provided, in pertinent part:

    [A] . . . complaints, disputes or grievances shall first be taken up by the representative of the Company within seven (7) days after the vessel reaches port, excluding Saturdays, Sundays, and holidays, or within seven (7) days after the Union has a reasonable opportunity to learn of the existence of a complaint, dispute or grievance. The party against whom the complaint has been filed shall have 72 hours to provide its answer to the complaint, dispute or grievance. If the parties are unable to settle the dispute within 30 days after the answer of the party complained against, the grieving party shall noti-

    fy the other party in writing of a desire to submit the matter to arbitration; provided however, that the parties to this Agreement shall confer, at least every 60 days, with same or, in the alternative, refer the grievance to arbitration as hereinafter set forth and provided, further that either party may in its sole discretion commence arbitration proceedings if it feels that further discussions relating to this grievance would be fruitless.
    .    .    .    .    .
    [E] Any grievance relating to a discharge shall be expedited and the matter shall automatically be arbitrable within five (5) working days from the date of discharge.

*Vaca v. Sipes*, 386 U.S. 171, 190–91, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1966).

The evidence adduced at trial showed that the Union in response to plaintiff's complaints invoked the initial grievance procedure. At a timely meeting with Interstate, John Fay, the Union representative, was shown a medical report dated September 15, 1976, of *plaintiff's* physician, Dr. Arthur A. Kirk, submitted by plaintiff in support of his claim in the prior personal injury action against Interstate (Defendant's Exhibit 41). Dr. Kirk had reported, in part:

> [Plaintiff] was seen in the office on September 9, 1976. He complained of left leg numbness from the knee down and back pain. He stated his left leg feels tired after working six hours. He gave a history of pulling a cable two and a half years ago on a barge and had low back pain and right hip and leg pain. He had surgery the first part of 1974 by A. G. Velo, M.D. and R. D. Butterworth, M.D. Since that time, he has continued to have low back pain, weakness, and left leg pain, which started after he returned to work. He returned to the same work as he was performing previously. He complained of pulling in the low back on bending and pain on sitting for prolonged periods of time. He stated that the left calf feels half asleep and looks swollen at times.
>
> It was my impression this patient has a chronic low back sprain with nonunion of the L4–5 area of the fusion and left sciatica. It is my opinion he has twenty-five percent (25%) permanent partial disability of the lower back as the result of the injury about two and a half years ago and necessary surgery. Since he is working regularly, it is recommended that he have no further surgery. A lumbosacral support would probably help his condition.

The collective bargaining agreement between the Union and Interstate provided, in part:

*Section 2. Union Furnishing Employees*
The Union agrees to furnish the Company with capable, competent and physically fit persons when and where they are required to fill vacancies necessitating the employment of employees covered hereunder, in ample time to prevent any delay in the scheduled departure of any vessel covered by this Agreement.

*Section 4. Company Rejection of Employees.*
A. The Union agrees that the Company has the right to reject, by written notation on the job assignment slips, any applicant for employment who the Company considers unsatisfactory or unsuitable for the position, or to discharge any employee, who, in the opinion of the Company is not satisfactory. If the Union considers the rejection of any applicant for employment or the discharge of any employee as being without reasonable cause, such action by the Company shall be dealt with under the grievance procedure as provided for herein, and the Union agrees that any such rejection or discharge shall not cause any vessel to be delayed on her scheduled departure.
B. If an applicant, referred by the Union, is rejected or an employee is discharged or demoted for medical reasons, the Union may challenge the decision of the *Company* physician. The applicant, or employee, shall then be re-examined by a United States Public Health Service physician, whose determination as to physical fitness of the applicant or employee shall be final and binding. (emphasis supplied)

The report shown to the Union representative was that of *plaintiff's* own physician not Interstate's. Although the report was originally produced incident to plaintiff's lawsuit against his employer, it was written by a reputable physician and served as part of the basis for a sizable settlement in favor of plaintiff. The Union representative had every right to rely on it as indicating a discharge with cause and a grievance without merit. Plaintiff has argued that there were other differing medical opinion ex-

tant. These, however, were never brought to the Union's attention by Interstate, by plaintiff or by plaintiff's attorney. Additionally, the collective bargaining agreement provides only that the Union may challenge the opinion of a company doctor.

■ The Union having considered a recent, authoritative and unfavorable medical report of plaintiff's own physician cannot be said on any view of the evidence to have acted arbitrarily, discriminatorily or in bad faith. The processing of the grievance though brief was not perfunctory. It is not the Court role to second guess a Union decision made rationally and in good faith that under the terms of the collective bargaining agreement a union member has been rightfully discharged. *Tedford v. Peabody Coal Co.,* 533 F.2d 952 (5th Cir. 1976); *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335 (6th Cir. 1975). *Cf. Lewis v. Greyhound Lines, East,* 181 U.S. App.D.C. 116, 555 F.2d 1053 (1977); *Russom v. Sears, Roebuck and Co.,* 558 F.2d 439 (8th Cir. 1977).

In deciding a motion for judgment notwithstanding the verdict, the Court must carefully

. . . consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be

granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir. 1969) (en banc).

In so reviewing all the testimony, the Court concludes the plaintiff has failed to present sufficient evidence to present a question for the jury and that judgment for the defendant should be entered notwithstanding the jury's verdict.

Defendants have moved in the alternative for a new trial. Despite the Court's ruling on the motion for judgment n. o. v., we are required to decide this motion for a new trial, even though it be only a conditional decision. Rule 50(c)(1), Fed.R.Civ.P. Although some cases have confused the criteria for judgment n. o. v. with those for a new trial,

[t]he distinction, . . ., is clear. Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side . . . He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based on evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceeding before him to prevent a miscarriage of justice.

*Garrison v. United States,* 62 F.2d 41, 42 (4th Cir. 1932).

■ In the present case, the Court has ruled that the evidence supporting a verdict for the plaintiff is insufficient as a matter of law, *a fortiori* the Court holds that a verdict for plaintiff is against the clear weight of the evidence.

The Court also finds that the jury verdict is clearly excessive and a new trial should be granted for this reason as well.

For the foregoing reasons, the judgment of this Court entered in favor of the plaintiff on the jury's verdict on June 22, 1978, is vacated and set aside and judgment is granted for defendants notwithstanding the jury's verdict. It is further conditionally ordered for the above reasons that a new trial be granted should the judgment entered by this Court be reversed on appeal.