THE PEOPLE *ex. rel.* ZEPHANIAH PLATT, ATTORNEY GE-
NERAL *v.* THE PRESIDENT, DIRECTORS AND COMPANY
OF THE OAKLAND COUNTY BANK.

The transactions and acts of a corporation may be proved by entries made in its
books.

Where, in an act of incorporation, it was provided that the same should be void, un-
less a certain sum of money was paid in, as part of the capital stock of the
corporation, within two years from its passage, it was *held*, that, after five years had
elapsed from the expiration of that period, it was too late to institute proceedings
to obtain a forfeiture, on account of omission to comply with such provision.

The Court will lay down no universal rule in such cases; but will decide whether the
delay has been unreasonable or not, from the circumstances of each case.

An act repealing the charter of the "Bank of Oakland County," cannot be construed
to be a repeal of the charter of "The President, Directors and Company of the
Oakland County Bank."

It is not necessary that a repealing act should correspond exactly, in naming the cor-
poration, with the act of incorporation which it is meant to repeal; but there must
be such a correspondence as will leave no doubt of the intention of the legislature.

Where, by its charter, a bank is located in one county, and it establishes an agency in
another county, where it receives deposites, and buys and sells exchange, it there-
by violates its charter. (*a*)

The buying exchange by a bank is, in effect, discounting paper.

*Semble*, that a bank may lawfully have an agency to redeem its bills, at a place oth-
er than that in which it is located by the charter.

*Quere* as to whether *quo warranto* or *scire facias* be the proper remedy by which
to proceed against a corporation, for violating its charter. (*b*)

This was an information in the nature of a *quo warranto*,
requiring the defendants to show by what right they ex-

---

(*a*) *Vide, Attorney General* v. *Oakland County Bank*, Walk. Ch. R. 90, and *Lyell*
v. *Farmers and Mechanics' Bank*, decided in the Court of Chancery in August, 1845,
and not yet reported.

(*b*) The decision of the Supreme Court in *The People* v. *The Erie and Kala-
mazoo Railroad Co.* in Jan. Term, 1846, contains a very full exposition of the pow-
ers and practice of the court, in proceedings by information in the nature of *quo
warranto*.

ercised certain corporate privileges and franchises.    No formal issues were joined, but the case was heard upon stipulation between the parties.    The following were the grounds relied upon by the Attorney General, and those facts admitted by the stipulation, out of which the legal principles decided by the court arose.

1. That the act under which the defendants claimed to be incorporated, became void, by the failure of the defendants to comply with the terms of the last section thereof.    The act was approved March 28, 1836, (S. L. 1836, p. 216.)    The last section declared, that unless the sum of $15,000 in specie was paid into the bank, within two years after the passage of the act, the same should be void and of no effect.    It was claimed that this sum was not paid in, within the time limited.    The only evidence upon this point was certain entries in the books of the bank, showing that the money was paid in ; and tending also to show that it was soon afterwards withdrawn from the bank.

2. That the charter of the bank was repealed by the " act to repeal the charters of certain banks and for other purposes," approved February 16, 1842 ; (S. L. 1842, p. 61,) which, it was admitted, was passed by a vote of two-thirds of both branches of the legislature.    This act repealed the charter of the " Bank of Oakland County." By the act of incorporation above mentioned, the corporate name of the defendants was, " The President, Directors and Company of the Oakland County Bank."    The view taken by the court renders it unnecessary to state the evidence admitted by the stipulation, as to whether the defendants complied with the terms of the saving condition contained in the second section of this repealing act.

3. That the bank had violated its charter by the establishment of an agency at Detroit, in the county of Wayne.

The charter required that the bank should be located in the county of Oakland.  In September, 1843, an agency of the bank was established at Detroit, where the cashier of the bank resided, and a large part of the funds of the bank were kept.  At this agency the defendants received and kept deposites, redeemed their bills, and, as incident to such redemption, bought and sold exchange.  Affidavits were read showing that the agency was established in good faith, and without the intention to violate the charter.  It was discontinued on the commencement of proceedings against the bank.

*Z. Platt*, Attorney General, for the people.

*T. Romeyn*, *A. D. Fraser* and *D. Goodwin*, for the defendants.

WHIPPLE, J. delivered the opinion of the Court.

1.  With respect to the first point, it was contended by the Attorney General that the books of the corporation, (the only testimony produced on either side upon the question,) furnished conclusive evidence that $15,000 in specie was not paid into the bank within two years after the passage of the act of incorporation ; or, at least, that the Court would be warranted in inferring that, although the $15,000 was paid in, yet it was immediately withdrawn, in fraud of the act creating the corporation.  We have examined the extracts from the books furnished us by the Attorney General, and are free to admit that they are well calculated to cast suspicion upon the fairness of this part of the transactions of the original stockholders.  Indeed it is difficult to arrive at a very satisfactory conclusion as to the true meaning of some of the entries.  In a proceeding of this nature, however, which has for its object the forfeiture of corporate rights, I hold it to be the duty of the Attorney General to support the allegations

People *v.* Oakland County Bank.

upon which he relies to procure a judgment of forfeiture, by such evidence as leaves no doubt of their truth upon the minds of the court or jury, to whom the issue may be referred for determination. Now it does appear, by the books, that $15,000 in specie was paid in, at the expiration of two years; and this entry, if considered separately, would be regarded as *prima facie* evidence that this part of the act was complied with, and would thus cast upon the Attorney General the burden of rebutting, by evidence clear and undoubted, the implication thus raised. I have already said that the other entries, immediately succeeding that relating to the payment of the $15,000, are of a suspicious character. To me they are inexplicable ; but this circumstance will not warrant this Court in permitting a mere suspicion of unfairness, or even fraud, to overthrow a fact legally and properly proved by the books themselves. For the doctrine is well established, that the transactions and acts of a corporation may be proved by entries made in its books; and such entries are considered the best evidence of the acts of a corporation. Ang. & Ames on Corp. 378. Again, if the $15,000 was in fact paid in and withdrawn, as argued by the Attorney General, a fraud of the grossest nature was perpetrated ; and to support such a charge the evidence should be clear and conclusive, and not be left to inference. I do not desire to be understood as asserting that fraud can only be established by *express* proof. From its very nature, it can seldom be shown in this way ; but, in the absence of such proof, it has always been deemed necessary to establish it by the proof of such acts, as lead the mind irresistibly to the conclusion that the fraud has been perpetrated. In other words, the inference must be a *necessary* consequence from the acts done. Matthews Pres. Ev. 29.

There are other circumstances, independent of those already stated, which would authorize this Court to hesi-

tate before pronouncing judgment against the defendants, upon the first ground assumed by the Attorney General. I refer now to the fact that the act incorporating the bank was passed about seven years since.   Although there is no statute limiting the time within which proceedings of this nature shall be instituted, yet the Court of King's Bench, in England, has exercised a sound discretion in this respect, and refused to permit informations to be filed, at the instance of private individuals, if there has been unreasonable delay in invoking its extraordinary interposition.   When the information is filed by the Attorney General, which may be done without a preliminary application to the Court, that discretion will be exercised upon the hearing of the cause.   This rule we think not only salutary, but reasonable ; and it is to be applied to cases as they arise, according to circumstances, until the legislature, (as in England,) shall deem it proper to prescribe some uniform rule on the subject.  Apply the rule, as it exists, to the facts in this case, and we think it would be unjust and unreasonable,—even if the evidence of the non-payment of the $15,000, as required by the act of incorporation, were stronger than it is,—to oust the corporators of their franchises for this reason.

2.  The next point to be considered is, whether the act incorporating the bank was repealed by the act of February 16th, 1842.   The 4th section of the act of incorporation constitutes the defendants a body politic and corporate, by the name of the " *President, Directors and Company of the Oakland County Bank ;*" the repealing act repeals the charter of " *The Bank of Oakland County.*"   It is urged by the Attorney General, that the words, "the Bank of Oakland County," are sufficiently descriptive of the name of the defendants ; and that, in any event, they are such a description as will justify the Court in *intending* that the legislature had in view the repeal of the defendants'

charter.   I am not aware of any rule by which courts are guided in the construction of statutes, that will authorize us in asserting, either that the *description* is sufficient, or that the inference is warranted.   " In applying the maxims of interpretation, the object is throughout, first to ascertain, and next to carry into effect, the *intentions* of the framer of the law."   Dwar. on Stat. 46.   " In exploring and discovering the *intention*, regard must be had to the words and context; and these words must be construed in their ordinary and familiar signification and import."   Id. 47.   Again,—" the construction to be put upon an act must be such as is warranted by, or at least not repugnant to, the words of the act."   Ib. 48.   We cannot, in order to give effect to what we may *suppose* to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, though the consequence be to defeat the object of the act.   Id.   Apply the rules thus collected, and which are of universal application, to the question under discussion, and it will be difficult to support either of the propositions contended for in argument by the Attorney General.   In this case we are not permitted to resort to testimony *aliunde,* to determine the intention of the legislature.   That intention must be gathered from the words of the act itself; which, in our view, will not justify us in presuming that the repealing act was intended to include the defendants.   This view of the question is abundantly established, not only by the canons of construction to which I have adverted, but by adjudged cases of the highest authority.   Cowp. R. 29 ; 2 Strange, 787.

In pronouncing this opinion, it is not intended to be asserted that there should be an exact correspondence, between the act creating and the one repealing a corporate charter, so far as the name of the corporation is concerned. All that is required is, that the repealing act should indi-

cate with sufficient clearness the name of the corporation intended to be repealed. There should be such a correspondence as to leave no doubt of the intention of the legislature. Especially is this required, in acts which are in their nature highly penal.

3. The last, and most important question, remains to be considered ; and that is, whether the establishment of an agency in the city of Detroit was a violation of the charter of the defendants. By the act of incorporation, the stockholders were authorized to locate the Bank in the county of Oakland. It follows, therefore, that, if the corporation has undertaken to exercise any of its franchises without that county, it has usurped an authority in violation of law, and must suffer the penalty which that law inflicts. The case admits that the bank redeemed its bills, kept deposites, and, as incident to such redemption, bought and sold exchange at the agency. Did these acts, or either of them separately considered, violate the law which gave a legal existence to the defendants? To determine this question, it is only necessary to define what business this bank was authorized, by the law of its creation, to do and perform. Such an examination will lead to the conclusion that it is a Bank, not simply of discount, but also of deposite. It is quite manifest that the defendants could not establish in this city an office of discount. If so, may it not equally be intended that they cannot establish an office of deposite? To my mind the conclusion is irresistible. It requires no profound knowledge of the mysteries of banking, to know that the *amount* of discounts, in institutions which profess to be guided by safe rules, is regulated chiefly by two considerations ;—first, the amount of actual capital paid in, and secondly, the amount of deposites. If banks did not discount upon the strength of their deposites, their profits would be greatly diminished ; and the discounts predicated upon such deposites, in a

well regulated bank, having its regular customers, are always deemed an entirely safe operation.

But it is unnecessary to push our inquiries any further upon this point, as we are all clearly of opinion that, in this respect, there was the assumption of an authority not warranted by law.    With regard to the purchase and sale of bills of exchange, in the manner and for the purposes stated in the case made, we are equally clear.    It is said that the sale and purchase were not, *in fact*, the discounting of paper, but were simply *incident* to the redemption of the notes of the bank.    This reasoning, although ingenious, will not bear scrutiny.    Let us for a moment analyze this power claimed by the defendants, and see to what practical result it would lead.    An individual has a draft of $1,000 on New York, which he is desirous of converting into available means, and offers it for sale at the counter of the bank.    The terms are agreed upon, the agent of the bank puts the bill in one drawer, and from another withdraws $1,000 with the premium, in its own bills perhaps; and this ends the transaction.    Now, it is insisted by the counsel for the defendants, that, although the draft is purchased, and purchased perhaps with the notes of the bank, yet it is received with a sort of mental reservation;—with the intent to appropriate and apply it towards the redemption of its notes, and perhaps the very notes with which it was bought.    Is it not manifest that this is an abuse of power; or if not, that it might lead to abuses of the grossest nature?    Stripped of all disguise, is it not, in fact, discounting paper?    Is it not the exercise of *banking* powers?    We think it is.    We do not desire to be understood as objecting to the right claimed by the defendants to redeem their bills in this city, in the mode in which country institutions usually redeem, but in so doing, we must insist that powers and privileges shall not be usurped, calculated to defeat the object and pur-

pose of the grant, and in their consequences infinitely dangerous to the community.

The only remaining question is as to the appropriate remedy in cases of this character. It was urged upon the Court, and insisted upon by the counsel for the defendants, that the remedy by *quo warranto* was misapplied, and that the only appropriate proceeding is by *scire facias*. In this particular case the question is unimportant; but, as a question of principle and practice, it is very desirable, as this is the first occasion upon which it has arisen, that it should be advisedly settled. I have devoted to the question as much time as I have been able to command, without arriving at a result satisfactory to my own mind. Consequently, the judgment of this Court upon this branch of the cause must for the present be deferred. If the remedy has been misconceived, it will terminate the present proceeding. If, on the contrary, the proceeding is warranted by law, the Court will then proceed to pass final judgment. In the mean time we feel authorized in saying that, in view of all the circumstances disclosed in the case made, seeing that the agency in question was probably established without any deliberate intention to violate the law, and that the same has been discontinued, we shall not feel disposed, as at present advised, to declare judgment of forfeiture against the defendants; but, in the exercise of that broad discretion with which we are clothed, to adapt the judgment to the circumstances of the case; admonishing those interested in the bank to see to it, that in the mean time, and for all time to come, they so conduct the affairs of the institution as not to render themselves obnoxious to legal proceedings. The public demand of us, and of all concerned in the administration of the law, the greatest vigilance in detecting, and punishing in the most exemplary manner, those who can and do wield so much power, when that power is so exerted as

to be productive of evil instead of good. [ And, while the judgment in this case may not deprive the defendants of important privileges, a repetition of the offence will be visited with the severest penalties of the law. ]

GOODWIN, J. did not participate in the decision, he having participated in the argument of the cause before he took his seat upon the bench.

This cause having been heard on the information in the nature of a *quo warranto,* stipulations and proofs filed therein, and having been fully argued by the Attorney General in person, and by the counsel for the defendants, and mature deliberation being had thereupon, the Court do hereby adjudge and declare, that the defendants, the said President, Directors and Company of the Oakland County Bank, are not guilty in the premises or in any part thereof, except as to the establishment, without lawful authority, of an agency in the city of Detroit; and as to that fact, (to wit, the establishment of such agency,) they are guilty.

And therefore it is considered, that the said defendants do pay to the people of the state of Michigan a fine of fifty dollars, and also the costs of this suit; and upon such payment being made, that the charter of the said defendants be deemed and held as legal and effectual, and that the said defendants may, without molestation or hindrance, use, have, and enjoy, all the rights, liberties, franchises and immunities conferred thereby; and that the said information, as to the said premises, be dismissed from this Court.